UNITED STATES of America,
Plaintiff-Appellee,

v.

Daniel JUDON, Defendant-Appellant.

No. 78–5201
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 6, 1978.

J. Louis Wilkinson, Birmingham, Ala. (Court-appointed), for defendant-appellant.

J. R. Brooks, U. S. Atty., Bill L. Barnett, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

Daniel Judon was convicted of armed bank robbery in violation of 18 U.S.C. § 2113(a)(d) and sentenced to the custody of the Attorney General for 12 years. We vacated and remanded this conviction, on appeal, with directions that an evidentiary hearing be conducted to determine whether

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

the FBI interview reports (Form FD–302) which were not disclosed to Judon at trial were "statements" within the meaning of the Jencks Act, 18 U.S.C. § 3500(e)(2). *See United States v. Judon,* 5 Cir. 1978, 567 F.2d 1289, 1293. On March 21, 1978, the trial court concluded that the 302's were not Jencks Act statements and therefore entered a new final judgment of conviction. This appeal followed.

## I

The facts surrounding this particular case were reviewed on the first appeal, 567 F.2d at 1290–91, and will be discussed here as briefly as possible. On November 8, 1976, the First Federal Savings and Loan Association in Northport, Alabama was robbed. FBI agent Frank R. Slapikas interviewed a bank teller, Deborah Beasley, on that day. On remand, Slapikas testified that he interviewed Beasley within a half an hour after the robbery. This interview lasted for about twenty-five minutes with Beasley providing a narrative account of the robbery and Slapikas interrupting her, on occasion, to ask questions. Slapikas further testified that he took notes during this interview and admitted that, although he did not attempt to write down verbatim what Beasley stated, he wrote "principally key words and phrases and things of this nature relating to the narrative she gave." Remand Transcript at 5. Slapikas used one sheet of paper for these notes. Approximately one week later he prepared a 302 based on "my notes and my memory and recall". Remand Transcript at 12.

FBI agent Tanana interviewed the bank manager, Betty Barnett, about fifteen minutes after the robbery. Tanana interviewed Barnett for between twenty and thirty minutes. He made notes on one page of the "highlights of that interview and more of a succinct summary or more or less the gist of the interview." *Id.* at 15. Two days later Tanana prepared a 302 based on the notes and his recollection of the interview.

## II

The government in any criminal action prosecuted by the United States is required to produce any statement of a witness in the possession of the government, after that particular witness has testified for the government on direct examination. 18 U.S.C. § 3500(b). A "statement" is defined in 18 U.S.C. § 3500(e) *as amended* as:

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

Judon contends that the 302's in this case constitute (e)(2) statements. The trial court, on the other hand, found that the "302's were not verbatim recitals of the oral interview nor were the notes substantially verbatim recitals of the oral statements." Order at 1–2.

On appeal we may not disturb the finding of the trial court that the 302's in question are not Jencks Act statements unless such finding is clearly erroneous. *United States v. Carrillo,* 5 Cir. 1977, 561 F.2d 1125; *United States v. Hodges,* 5 Cir. 1977, 556 F.2d 366, *cert. denied,* 434 U.S. 1016, 98 S.Ct. 735, 54 L.Ed.2d 762 (1978); *United States v. Bell,* 5 Cir. 1972, 457 F.2d 1231.

Whether the 302's contain sufficiently extensive verbatim recitation to bring the notes within the Act is a matter of fact to be decided by the trial court on the basis of conflicting testimony. *United States v. Hodges, supra* at 368; *United States v. Cruz,* 5 Cir., 478 F.2d 408, 413, *cert. denied,* 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973). The trial court's finding will constitute clear error where such finding either rests upon an incorrect rule of law or is inconsistent with the facts upon which it

purports to rest. *Williams v. United States,* 119 U.S.App.D.C. 177, 338 F.2d 286, 289 (1964), *cited in Lloyd v. United States,* 5 Cir. 1969, 412 F.2d 1084, 1088 n. 16.

■ In reviewing the case *sub judice* we must keep in mind that in enacting the Jencks Act, Congress

> strongly feared that disclosure of memoranda containing the investigative agent's interpretation and impressions might reveal the inner workings of the investigative process and thereby injure the national interest [and] it was felt to be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations.

*Palermo v. United States,* 360 U.S. 343, 350, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959); *see Menendez v. United States,* 5 Cir. 1968, 393 F.2d 312, *cert. den.,* 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 572 (1969). Therefore, Congress limited statements that are producible under the Jencks Act to

> those cases in which the agent actually purports to make a substantially verbatim recital of an oral statement that the witness has made to him—not the agent's own comments or a recording of his own ideas  .   .   . .

*Palermo v. United States, supra,* 360 U.S. at 358–60, 79 S.Ct. at 1228 (floor conversation between Senator Javitts and Senator O'Mahoney, sponsor of the original Senate bill and one of Senate Conferees). Thus interview reports which contain the interpretations or impressions of agents or "which were prepared after the interview without the aid of complete notes, and hence rest on the memory of the agent," are not producible under the Jencks Act. *Palermo v. United States, supra* at 353, 79 S.Ct. at 1225.

With these principles in mind we must conclude that the trial court's failure to order production of the 302's was not in error. At a minimum, the 302's in this case do not constitute (e)(2) statements unless they are essentially transcriptions of the interview notes. The facts presented here support the conclusion that the 302's are not transcriptions of the interview notes.[1]

The notes prepared by Agent Tanana contained a one handwritten page summary of the highlights of his interview with Barnett. Agent Slapikas's notes contained key words and phrases of his interview with Beasley. He also used only one handwritten page for his notes. The 302's prepared subsequently by both agents were far more detailed than the notes. Agent Tanana's 302 was one and one-half single-spaced typed pages. Agent Slapikas's 302 was three single-spaced typed pages. Both contained the witness's account in narrative form.

The trial court could reasonably conclude from the difference between the notes and the 302's that the agents did more than simply translate their interview notes into typewritten form. There is additional evidence in the record to support this conclusion. Both agents testified that they used the interview reports to jog their memory and on this basis prepared the 302's. Although the agents may have attempted to accurately reflect the accounts provided by the witnesses, their reliance on memory as well as the incomplete notes presents the danger that the final report of the interviews, the 302's, contained impressions of the agents here and not of the witnesses. This danger is of particular concern where, as here, Agent Slapikas candidly testified that at the time he was preparing the 302 his memory was incomplete. Remand Transcript at 11. Production of these reports would threaten the witnesses with impeachment on the basis of statements that they did not make.

---

1. Because we conclude that the 302's are not essentially transcriptions of the interview notes it is unnecessary to determine whether the interview notes which were destroyed constitute (e)(2) statements. In addition, Judon does not contend on appeal that the trial court erred in failing to impose Jencks Act sanctions for the destruction of the interview notes and therefore it is unnecessary for us to address this issue.

■ The trial court was entitled to find that the 302's, which differed from the notes in detail and length and, further, were based on the agents' memories as well as the notes, were not Jencks Act material. Accordingly, we affirm.

AFFIRMED.