**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Wilton A. WELCH, Jr., and Wilton A.**
**Welch, III, Defendants-Appellants.**

**No. 86–4104.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1987.

---

Julie Epps, Jackson, Miss. (Court-appointed), for Welch, Jr.

Robert W. Sneed, Jackson, Miss. (Court-appointed), for Welch, III.

Ruth R. Hams, Asst. U.S. Atty., and George Phillips, U.S. Atty., Jackson, Miss., for the U.S.

Before VAN GRAAFEILAND,[*] HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Defendants appeal their conviction under 21 U.S.C. § 846 of conspiracy to "manufacture, distribute and possess with intent to distribute phenylacentone and methamphetamine." They argue that the jury charge did not sufficiently explain their defense that they were acting under a reasonable

[*] Circuit Judge of the Second Circuit, sitting by designation.

belief that they were cooperating with the FBI, that the 23–month delay from arraignment until trial violated the Speedy Trial Act, 18 U.S.C. § 3161, and that the government's failure to produce a Drug Enforcement Administration agent's investigation reports violated the Jencks Act, 18 U.S.C. § 3500. We are persuaded that the district court's jury instructions were adequate and that the pretrial delay was excludable under the Speedy Trial Act, but we remand to the district court to review in camera the investigation reports as the Jencks Act requires.

I

In the fall of 1983, Wilton Anthony Welch, Jr., and James Howell acquired a formula for making "speed." They sought the financial assistance of Glen Crane, who provided money for the purchase of chemicals and equipment. Crane rented a house under an assumed name, and the three men made several unsuccessful attempts to manufacture speed. On occasion, Wilton Anthony Welch III watched the three and helped clean up.

Meanwhile, Ronald Gospodarek, a special agent with the DEA, learned that Howell had made frequent purchases of chemicals that could be used to manufacture controlled substances. Gospodarek began an investigation that led to a meeting with Howell and Crane to discuss the manufacture of methamphetamine. Gospodarek testified that Howell and Crane agreed to pay him $5,000.00 for his help in manufacturing methamphetamine.

On December 1, 1985, Gospodarek began to teach Howell and Crane how to make methamphetamine. Later, Welch, Jr., arrived and Crane introduced him to Gospodarek as a "major backer" of the scheme. Gospodarek explained how to monitor the manufacturing process and then returned to his motel. The next day Gospodarek gave DEA agents the information needed to obtain a search warrant, which led to the arrest of Howell, Crane, Welch, Jr., and Welch III.

The indictment charged Howell, Crane, Welch, Jr., and Welch III, with conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. Crane was also charged with violating 21 U.S.C. § 843(b), and Crane and Howell were charged with violating 18 U.S.C. § 2 and § 1952(a)(3). Crane and Howell pled guilty before trial. A jury found Welch, Jr., and Welch III guilty of the conspiracy charge.

II

The Welches argued at trial that they participated in the conspiracy because they reasonably believed that they were cooperating with the FBI as informants and therefore lacked the required specific intent. The Welches argue that the district court's explanation to the jury of their defense was inadequate and plain error—plain error because they admittedly did not request additional explanation of their defense and did not object to the court's explanation.

■ An error in a charge is plain only when, considering the entire charge and the evidence presented against each defendant, there is a likelihood of a grave miscarriage of justice. *United States v. Gerald*, 624 F.2d 1291, 1300 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). The district court told the jury:

> You may consider whether or not the defendants or either of them were cooperating with the F.B.I. with regard to the specific offense charged in the indictment in determining whether the defendants possessed the intent necessary to commit the crime charged.

The asserted inadequacy is that this instruction required a showing that the Welches were in fact cooperating with the FBI. In their view, the charge should have required only that they demonstrate that they had a good faith, though mistaken, belief that they were cooperating with the FBI.

■ The argument by necessity depends upon a cropped view of the charge, unacceptably so, because "[w]e review claimed deficiencies in a jury charge by looking to the entire charge" in the context of trial including counsel's closing arguments. *United States v. Chagra,* 807 F.2d 398, 402 (5th Cir.1986). Here, the closing arguments were not included in the record on appeal. But the disputed instruction was adequate when read as part of the entire charge. Indeed, before giving the assertedly inadequate explanation, the court told the jury:

> The crime charged in this case requires proof of specific intent before the defendants can be convicted. Specific intent means more than the general intent to commit the act. To establish specific intent, the Government must prove beyond a reasonable doubt that the defendants knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

We are persuaded that the charge, read as a whole, suggests to the jury that the defendants would be entitled to their contended for good faith defense if they thought they were cooperating with the FBI and not violating the law. There was no plain error.

### III

■ The Welches contend that the district court erred in not granting their motion to dismiss the indictment for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. The Speedy Trial Act requires that a defendant be tried within seventy days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate. 18 U.S.C. § 3161(c)(2). Here, the seventy-day period began to run on January 11, 1984, the date of Welch III's arraignment.[1] The

trial did not start until December 12, 1985. However, § 3161(h)(1)(F) excludes from the seventy-day limit "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." On January 25, 1984, Welch III filed a Motion for Discovery, and the court issued an Agreed Discovery Order on April 9, 1984. In addition, on January 25, 1984, Welch III filed a Motion for Severance requesting that his case be severed from the other defendants. The motion was noticed for February 24, 1984, and later for June 8, 1984; but no hearing on the motion ever took place. On June 11, 1984, defendants Howell and Crane pled guilty. The case went to trial without a hearing or dispositive order on the motion to sever.

■ Welch III argues that he abandoned the severance motion after Crane and Howell pled guilty. However, by its terms, the motion to sever still applied to Welch, Jr., after Crane and Howell pled guilty, and we find nothing in the record to suggest that the government or the court was told that the severance was no longer requested. Welch III argues that in any event a delay of a year-and-a-half is unreasonable. But in *Henderson v. United States,* —— U.S. ——, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986), the United States Supreme Court held that "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70–day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'" Nothing in the record suggests that Welch III attempted unsuccessfully to receive a hearing or that a hearing was deliberately refused with intent to evade the Speedy Trial Act. Therefore, the time from January 25, 1984, until the trial began was excludable under the Speedy Trial Act. *See United*

---

1. Welch, Jr., was arraigned on January 5, 1984. Under § 3161(h)(7), defendants who are joined for trial generally fall within the speedy trial computation of the latest defendant. *See*

*Henderson v. United States,* —— U.S. ——, 106 S.Ct. 1871, 1873 n. 2, 90 L.Ed.2d 299 (1986). Thus, Welch, Jr.'s seventy-day period began to run on January 11, 1984.

*States v. Horton,* 705 F.2d 1414, 1416 (5th Cir.), *cert. denied,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983); *see also United States v. Schuster,* 777 F.2d 264, 268, *vacated as moot,* 778 F.2d 1132 (5th Cir. 1985). Accordingly, the trial commenced timely.

## IV

The Welches contend that the district court's denial of defendants' request for production of two investigation reports prepared by Agent Gospodarek violated the Jencks Act, 18 U.S.C. § 3500. During voir dire examination of Gospodarek by counsel for Welch III, Gospodarek testified that he had prepared three reports about his undercover investigation. The government had provided one of the reports to defense counsel during plea-bargaining and only the other two reports were at issue. Gospodarek testified that one report involved his investigation of Crane and Howell in Houston, Texas, and the other was a "general intelligence report" concerning the purchases of chemicals.

After learning of these reports defense counsel asked the court to order their production.[2] The prosecutor replied that Gospodarek's reports of the investigation were not Jencks Act statements. The district court denied the defendant's motion without conducting an in camera review of the reports, persuaded by the government's trial counsel that "such reports as have been described by [Gospodarek] are not section 3500 material or Jencks Act material."

Section 3500 of the Jencks Act provides in part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness.....

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

---

**2.** At trial, defense counsel argued that the government's failure to produce the reports five days before trial violated the Agreed Discovery Order. The Agreed Discovery Order states:

The government shall provide to defendant a list of all government witnesses to be used in its case in chief and all statements of these witnesses as that term is defined in 18 U.S.C., section 3500(e), at least five (5) working days prior to trial on the merits.

In *United States v. Campagnuolo,* 592 F.2d 852, 858 (5th Cir.1979), we ruled that a pretrial discovery order was invalid to the extent that it allowed discovery beyond the limitations of the Jencks Act. *See* 18 U.S.C. § 3500(a). We are unaware of anything authorizing the district court to amend this mandate. *See United States v. Algie,* 667 F.2d 569, 571 (6th Cir.1982). Nevertheless, § 3500 does not prohibit the government from disclosing Jencks Act material before trial. Indeed, we encourage the practice, *see United States v. McKenzie,* 768 F.2d 602, 609 (5th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986), and applaud the district court's use of such a hortatory discovery order. But the government's failure to comply with the order does not warrant exclusion of Gospodarek's testimony or a mistrial, and that failure is not the cause of our remand.

(e) The term "statement," as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement....

The district court apparently was persuaded that an agent's investigation report never can be a Jencks Act statement when the agent himself is the witness. The government urges that we affirm because the district court's conclusion that the reports are not Jencks Act statements is not prima facie clearly erroneous.

■ In *United States v. Sink*, 586 F.2d 1041, 1051 (5th Cir.1978), *cert. denied*, 443 U.S. 912, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979), we held that an agent's investigation report, which the agent prepared from his notes and recollections from witness interviews, "was clearly a 'statement' as to [the agent]." Thus, investigation reports *can* be an agent's "statement" required to be produced under the Jencks Act. The prosecutor's argument, accepted by the district court, failed to appreciate the difference between the question whether notes taken by agents during a witness interview constitute Jencks Act statements of *that witness*, and the issue before us, whether the report compiled by an agent during undercover activities constitutes Jencks Act statements of the *agent*. An agent's interview notes are not "statements" of the witness unless the witness "signed or otherwise adopted or approved" the report, 18 U.S.C. § 3500(e)(1), or the notes were "substantially verbatim reports" of the witness interview. 18 U.S.C. § 3500(e)(2); *see United States v. Cole*, 617 F.2d 151, 153 (5th Cir.1980), *cert. denied*, 452 U.S. 918,

101 S.Ct. 3055, 69 L.Ed.2d 422 (1981); *United States v. Gaston*, 608 F.2d 607, 611 (5th Cir.1979).

■ Gospodarek conducted the undercover investigation leading to the defendants' arrests and witnessed the defendants' efforts to establish a methamphetamine lab. Gospodarek was not simply conducting witness interviews after the fact. The only question is whether the reports relate to the subject matter of Gospodarek's trial testimony. *See* 18 U.S.C. § 3500(b). To answer this question, the trial court must conduct an in camera inspection of the reports. *See* 18 U.S.C. § 3500(c).

■ In sum, the apparent basis for the district court's conclusion that Gospodarek's investigation reports were not Jencks Act statements was based on an error of law and was not subject to the clearly erroneous rule. *See United States v. Judon*, 581 F.2d 553, 554 (5th Cir.1978). As we explained in *Judon*, "The trial court's finding will constitute clear error where such finding either rests upon an incorrect rule of law or is inconsistent with the facts upon which it purports to rest." *Id.* at 554–55.

■ The government argues that because the Welches did not ask that the statements be produced for consideration on appeal, they waived their claim. In *United States v. Cole*, 617 F.2d at 153, however, we remanded for the district court to determine whether an agent's investigation reports were Jencks Act statements, even though the disputed memoranda were not made part of the record on appeal. The government's contention that *United States v. Edwards*, 702 F.2d 529, 531 (5th Cir.1983), requires the opposite result is without merit. In *Edwards* an in camera review was unnecessary because counsel made no showing that the FBI's report was "adopted" by the witness or was a "verbatim recital" of the witness's statement. Here Gospodarek was both the witness and the agent who drafted the

reports. There was no question that Gospodarek either adopted the reports or the reports were verbatim recitals of his statements. Therefore, the Welches were *prima facie* entitled to production of the reports under § 3500(c).[3]

We remand to permit the district court to determine in the first instance whether the reports constitute statements relating to the subject matter of Gospodarek's testimony under 18 U.S.C. § 3500(c). If the district court decides that none of the reports should be produced under the Jencks Act, it should supplement the record with the entire text of the reports and with sufficiently detailed findings to enable this court to review the decision. If the Welches contest the district court's findings, they need not file a new appeal. They may, instead, lodge with this court certified copies of the trial court's findings and, if needed, supplementary briefs or other materials. The matter will be referred to this panel. *See United States v. Gaston,* 608 F.2d 607, 614 n. 3 (5th Cir.1979). If the court concludes that any portion of the reports should be produced, it should then determine whether the failure to furnish them at the conclusion of Gospodarek's direct testimony was harmless. Unless the district court is persuaded that the error was harmless, it should vacate the judgment of conviction and grant a new trial.[4] *See United States v. Cole,* 617 F.2d at 153; *see also Campbell v. United States,* 365 U.S. 85, 98–99, 81 S.Ct. 421, 428, 5 L.Ed.2d 428 (1961).

REMANDED for further proceedings consistent with this opinion.

REMANDED.

---

**3.** It is true defense counsel sought a mistrial or exclusion of Gospodarek's testimony rather than specifically requesting production of the reports. It is also true that the defense motions for mistrial or exclusion of Gospodarek's testimony emphasized the government's violation of the pretrial order rather than the refusal to then produce the Jencks Act statements. But defense counsel's requested relief obviously assumed from the district court's acceptance of the government's position that the statement would not be produced at any time. The judge knew that the defendants wanted the statements. His ruling is properly before us.

**4.** Of course, the court should excise those portions of the reports that do not relate to the subject matter of Gospodarek's testimony before directing delivery of the reports to the Welches. *See* 18 U.S.C. § 3500(c).