**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**June 14, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 04-30185
c/w No. 05-30668

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE STEPHENS,

Defendant-Appellant.

Appeals from the United States District Court
For the Middle District of Louisiana

Before KING, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In these consolidated appeals, Eddie Stephens ("Stephens") challenges his convictions and

sentence for various charges arising out of a string of armed bank robberies in the Baton Rouge,

Louisiana area. The main issue on appeal is whether Stephens's rights under the Speedy Trial Act,

18 U.S.C. §§ 3161-3174, were violated by delays in bringing him to trial.

I

As reflected by the trial evidence, Stephens is a disbarred Louisiana attorney who, after

developing problems with drugs and alcohol, began spending time with William Turner ("Turner"), a drug dealer whom Stephens had known since 1996. According to Turner, he and two of his cohorts, Cleveland Golden ("Golden") and Timothy Talbert ("Talbert"), had committed several armed bank robberies in the Baton Rouge area, and when, in June 1998, Stephens indicated that he knew how to clean money marred by exploding dye packs, the men allowed him to join in their next robbery. Thereafter, the group planned several additional robberies, which were carried out by various members of the group.[1] Law enforcement officers investigating the string of bank robberies eventually identified Turner as a potential suspect and began surveilling him. On December 21, 1998, after observing Turner and three other men engage in what appeared to be casing activities near a Bank One, officers secured the bank in anticipation of a robbery. Turner, Talbert, and Golden approached the bank in a stolen Oldsmobile but sped away when they spotted an unmarked surveillance vehicle. Officers then arrested Stephens, who was sitting in a Cadillac parked behind the bank. Stephens admitted that he was waiting for Turner but denied having any knowledge of a plan to rob the bank that day.

On October 16, 2000, the Government filed a criminal complaint against Stephens, charging him with participating in the July 1, 1998 robbery, the August 14, 1998 robbery, the October 16, 1998 robbery, and a November 13, 1998 robbery of a Deposit Guaranty Bank. The complaint also charged Stephens with conspiring to commit those robberies and the thwarted robbery of the Bank One on December 21, 1998. Stephens made his initial appearance before a magistrate judge ("MJ")

---

[1] More specifically, there was evidence at trial indicating that all four men robbed a City National Bank on July 1, 1998 (the "July 1, 1998 robbery"); that Stephens robbed a Bank One on August 14, 1998 (the "August 14, 1998 robbery"); and that Turner, Talbert, and Stephens robbed a Whitney Bank on October 16, 1998 (the "October 16, 1998 robbery").

on October 27, 2000. The MJ subsequently held a detention hearing, where, after hearing testimony from Stephens, the MJ found that Stephens presented a flight risk and a danger to the community and ordered him detained pending trial.

On November 15, 2000, a federal grand jury returned an indictment against Stephens and Turner, charging them with one count of conspiracy to commit bank robbery, one count of armed bank robbery in connection with the July 1, 1998 robbery, and one count of using a firearm during that robbery.[2] Two weeks later, on November 29, 2000, Stephens filed *pro se* motions to obtain a private investigator and an expert witness. The MJ struck both motions the following day, stating that because Stephens had been provided with counsel, he "should not be filing anything in the record that is not signed by counsel of record." Nevertheless, on December 5, 2000, Stephens filed *pro se* motions for leave to act as co-counsel and to obtain copies of all pleadings filed in the case. Two days later, Stephens filed two more *pro se* motions, one for reconsideration of the detention order and another for a bill of particulars. The MJ denied Stephens's motion for reconsideration of his detention order but did not immediately rule on the remainder of Stephens's *pro se* motions. Instead, the MJ scheduled a motion hearing for January 16, 2001, where, after questioning by the MJ, Stephens withdrew his motion to act as co-counsel and the MJ denied the remaining motions.

On January 25, 2001, Turner filed a motion to determine his mental competency to stand trial, and Stephens filed a motion to sever his case from that of Turner for trial purposes. The district court granted Turner's motion the following day but did not rule on Stephens's severance motion. Almost three months later, on May 18, 2001, the government filed a response in opposition to Stephens's

---

[2] The indictment also charged Turner with three additional counts of bank robbery and three additional counts of using a firearm during a crime of violence in connection with bank robberies that occurred on October 27, 1997, April 8, 1998, and June 12, 1998.

motion. Again, however, the district court made no ruling on the motion.

After lengthy competency proceedings and an evidentiary hearing, the district court ruled on April 10, 2002 that Turner was competent to stand trial.[3] The next day, Turner pleaded guilty to three counts in the indictment pursuant to a written plea agreement. The district court accepted Turner's guilty plea and referred his case to the probation department for preparation of a presentence investigation report; however, the court deferred acceptance of the plea agreement until Turner's sentencing, which was subsequently set for August 16, 2002.[4] One week later, the district court set Stephens's case for a jury trial on July 22, 2002. On May 30, 2002, however, the government filed a superseding indictment against Stephens alone. The superseding indictment added several counts to the charges already pending against Stephens, including two counts of bank robbery and two counts of using a firearm during a crime of violence in connection with the August 14, 1998 and October 16, 1998 robberies.

Thereafter, Stephens filed several motions to continue his trial date, the first of which was filed and granted on June 7, 2002. The court continued the trial date until September 16, 2002. On

---

[3] During the fifteen-month period while Turner's competency proceedings were pending (from January 25, 2001 to April 10, 2002), Stephens filed several motions, including: (1) an August 21, 2001 *pro se* petition for a writ of habeas corpus, in which he asserted that his continued incarceration violated the Speedy Trial Act, but on which the district court never ruled; (2) a September 4, 2001 motion for the withdrawal of his counsel, which was granted the same day; (3) a September 10, 2001 motion by Stephens's new counsel to continue the October 22, 2001 trial date, which the district court granted two days later, continuing the trial date to December 3, 2001; (4) a November 5, 2001 motion for continuance, which the district court again granted, continuing the trial date to March 25, 2002; and (5) a February 6, 2002 motion for a new detention hearing, which the MJ held on March 14, 2002 and, after hearing evidence, reaffirmed the detention order. Moreover, due to Turner's ongoing competency proceedings, the district court continued the trial date again to May 13, 2002.

[4] *See* Fed. R. Crim. P. 11(c)(3)(A) (authorizing the court to accept, reject, or defer a decision on certain plea agreements until after the court has reviewed the defendant's presentence report).

August 27, 2002, Stephens again moved for an "ends of justice" continuance of the trial date, but the district court denied the motion the following day. Then, on September 10, 2002, Stephens gave notice that he intended to rely on an insanity defense and filed a motion for a competency hearing, along with his third motion for a continuance. The district court granted both motions the next day and ordered that Stephens be committed to the custody of the attorney general for psychiatric and psychological testing. According to Stephens, he did not arrive at the Federal Medical Center in Fort Worth, Texas until 29 days later, on October 10, 2002. Over the next six months, four extensions of time were granted to the Federal Medical Center, ultimately extending the deadline for the completion of Stephens's mental evaluation to April 25, 2003. Stephens's competency hearing took place on July 31, 2003, and at the end of the hearing, the district court scheduled a jury trial for October 27, 2003. After receiving the parties' post-hearing briefs, the district court ruled on August 22, 2003 that Stephens was competent to stand trial. The government immediately filed a motion to transfer custody of Stephens, which was granted on August 27, 2003.

On October 8, 2003, Stephens filed two motions: one to dismiss the indictment due to a Speedy Trial Act violation and one to dismiss due to pre-indictment delays.[5] The following week, Stephens moved to waive his right to a jury trial. With the government's consent, the district court granted Stephens's motion for a bench trial on October 17, 2003. Four days later, the district court denied Stephens's motion to dismiss due to pre-indictment delays, finding that there was no evidence of intentional pretrial delays on the part of the government and that Stephens had failed to show any prejudice. The bench trial commenced on October 27, 2003 and concluded on October 30, 2003,

---

[5] In his Speedy Trial Act motion, Stephens asserted only that he had not been brought to trial within seventy days from the filing of the indictment against him; he made no claim that the superseding indictment was untimely.

with the court finding Stephens guilty on all seven counts in the superseding indictment. One week later, the district court issued its written ruling denying Stephens's Speedy Trial Act motion. The district court concluded that, after factoring in all excludable delays, only sixty-nine days had elapsed on the Speedy trial clock.[6] On February 19, 2004, the district court sentenced Stephens to fifty years and ten months imprisonment.[7] Stephens timely appealed his convictions and sentence.

On November 5, 2004, Stephens filed in the district court a *pro se* motion for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(1), alleging that newly discovered evidence of prosecutorial misconduct entitled him to a new trial. Stephens claimed that the government had: concealed from him evidence that Turner had opened a savings account at the Bank One Stephens was convicted of robbing prior to that robbery; advised Turner to deny any knowledge of that account when testifying against Stephens; and threatened to forbid Turner from contact with his children and to prosecute his wife if he refused to testify against and implicate Stephens. After receiving the parties' briefs, the district court denied Stephens's motion without an evidentiary hearing, ruling that the "evidence" about which Stephens complained was not newly discovered. Stephens timely appealed the district court's ruling, and his two appeals were consolidated.

---

[6] Although the district court stated in its ruling that only sixty-two non-excludable days had elapsed on the Speedy trial clock, the government concedes that the court's calculation contained a mathematical error, in that the court inadvertently failed to add in seven of the non-excludable days that it had found. Thus, the district court actually found that sixty-nine non-excludable days had elapsed.

[7] Specifically, the district court sentenced Stephens to sixty months on count one (conspiracy) and seventy months on each of counts two, three, and four (bank robbery), to be served concurrently to each other; five years on count five (use of a firearm during the July 1, 1998 robbery), to be served consecutively to all other counts; and twenty years on each of count six (use of a firearm during the August 14, 1998 robbery) and count seven (use of a firearm during the October 16, 1998 robbery), to be served consecutively to each other and all other counts.

II

Stephens first challenges the district court's denial of his motion to dismiss the indictment for an alleged Speedy Trial Act violation. We review the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions *de novo*. *United States v. Bieganowski*, 313 F.3d 264, 281 (5th Cir. 2002).

A

The Speedy Trial Act, which is designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings, requires that a defendant's trial commence within seventy days from his indictment or initial appearance, whichever is later. *See* 18 U.S.C. § 3161(c)(1); *United States v. Johnson*, 29 F.3d 940, 942 (5th Cir. 1994). Under § 3161(h), however, certain delays are excluded in calculating the seventy-day period. 18 U.S.C. § 3161(h)(1)-(9). Among the kinds of delay that are excludable are: delay resulting from mental competency proceedings; delay resulting from any pretrial motion; delay resulting from the court's consideration of a proposed plea agreement; delay resulting from the transportation of a defendant to and from a place of examination or hospitalization, up to a period of ten days; and delay resulting from an "ends of justice" continuance. *Id.* § 3161(h)(1), (8). Also excludable are any reasonable periods of delay attributable to a codefendant. *Id.* § 3161(h)(7). "If more than seventy non-excludable days pass between the indictment and the trial, the 'indictment shall be dismissed on motion of the defendant.'" *Johnson*, 29 F.3d at 942 (quoting18 U.S.C. § 3162(a)(2)).

In this case, three years passed between the filing of the original indictment against Stephens in November 2000 and the commencement of his trial in October 2003. Although Stephens concedes that this three-year period contains numerous periods of excludable delay, he contends that the district

court erroneously concluded that three events stopped his speedy trial clock: (1) his December 7, 2000 *pro se* motion for a bill of particulars, which was held to toll the clock until the MJ's denial of the motion on January 16, 2001; (2) Turner's January 25, 2001 motion for a competency hearing, which was held to toll the clock until the conclusion of the competency proceedings on April 10, 2002; and (3) Turner's April 11, 2002 guilty plea, which was held to toll the clock until the superseding indictment was filed against Stephens on May 30, 2002.[8]

After carefully reviewing the record, we conclude that Stephens's first two objections are meritless. First, the district court correctly concluded that Stephens's "artfully drawn" *pro se* motion for a bill of particulars stopped the clock from the date it was filed (December 7, 2000) through the date the MJ held a hearing on and denied the motion (January 16, 2001).[9] Second, the district court

_____

[8] In addition, Stephens argues that (1) the district court erred in excluding nineteen of the twenty-nine days between the date of the district court's order committing him to the custody of the attorney general for a mental examination (September 11, 2002) and the date of his arrival at the Federal Medical Center, which he contends was October 10, 2002, *see* 18 U.S.C. § 3161(h)(1)(H) (excluding "delay resulting from transportation of any defendant . . . to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable"); and (2) because more than thirty non-excludable days passed between his October 26, 2000 arrest on the criminal complaint and his May 30, 2002 superseding indictment, the two new firearm counts in the superseding indictment))which he contends were charged in the criminal complaint))were untimely, *see* 18 U.S.C. § 3161(b) (providing that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges"). Because we conclude below that Stephens's trial was not timely under § 3161(c)(1) for reasons unrelated to his transportation to the Federal Medical Center, we do not reach either of the aforementioned arguments.

[9] *See* 18 U.S.C. § 3161(h)(1)(F) (excluding "delay resulting from *any* pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion") (emphasis added); *United States v. Clark*, 807 F.2d 412, 414 & n.3 (5th Cir. 1986) (excluding delay resulting from an "artfully drawn" *pro se* motion to revoke a pretrial detention order); *United States v. Springer*, 51 F.3d 861, 865 (9th Cir. 1995) (holding that even frivolous motions stop the clock because the Speedy Trial Act "does not contain a requirement that the merits

correctly concluded that Turner's motion for a competency evaluation stopped the clock from the date it was filed (January 25, 2001) through the date the court ruled that Turner was competent to stand trial (April 10, 2002).[10] We therefore focus our attention on Stephens's third objection, which challenges the exclusion of the seven-week period between the court's acceptance of Turner's guilty plea on April 11, 2002 and the filing of the superseding indictment against Stephens on May 30, 2002. If, as Stephens contends, this period is not excludable from his speedy trial clock, then more than seventy days will have elapsed and a Speedy Trial Act violation will have occurred.

The district court determined that Stephens's speedy trial clock stopped when Turner pleaded guilty to the original indictment on April 11, 2002 because the court was considering the plea agreement that had been entered into by Turner and the government. *See* 18 U.S.C. § 3161(h)(1)(I) (excluding "delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government"). The district court found this

of a motion be assessed before a delay is permitted"); *see also Johnson*, 29 F.3d at 943 n.4 (explaining that "[w]hen counting days for Speedy Trial Act purposes, the actual filing date of the motion, and the date of the court's disposition are excludable").

[10] *See* 18 U.S.C. § 3161(h)(1)(A) (excluding "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant"); § 3161(h)(7) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). Although the district should have first considered whether the fifteen-month period of delay resulting from Turner's competency proceedings was a "reasonable period of delay" within the meaning of § 3161(h)(7) before excluding that period from Stephens's speedy trial clock, the district court's error is harmless. The record supports the conclusion that this period was a "reasonable period of delay," given that (1) it was necessary to preserve the possibility of a joint trial of Turner and Stephens; (2) there is no evidence that the government's pursuit of a joint trial was disingenuous at that point; (3) at least eleven months of the fifteen-month period would have been excludable based on Stephens's own motion practice; and (4) Stephens has not shown that the delay impaired his ability to defend himself or was otherwise oppressive. *See United States v. Franklin*, 148 F.3d 451, 456-58 (5th Cir. 1998) (analyzing the reasonableness requirement of § 3161(h)(7)). Accordingly, the delay resulting from Turner's competency proceedings was excludable from Stephens's speedy trial clock.

period excludable as to Stephens because Turner was still his codefendant at the time. The court further determined that the speedy trial clock remained stopped until May 30, 2002, when the superseding indictment was filed against Stephens alone, because "[a]t that point, [Turner and Stephens] could no longer be considered co-defendants." Stephens contends that this seven-week period was not a "reasonable period of delay" within the meaning of § 3161(h)(7) and, hence, should not have been excluded from his speedy trial clock.

Section 3161(h)(7) provides for the exclusion of a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). This means that "the excludable delay of one codefendant may be attributable to all codefendants." *Franklin*, 148 F.3d at 455. Attribution of the excludable delay of one codefendant to another codefendant is not, however, automatic; rather, the period of delay must be reasonable. *See Henderson v. United States*, 476 U.S. 321, 326-27 (1986). The reasonableness of the delay can be measured in reference to either (1) "the totality of the circumstances prior to trial"; or (2) "the actual prejudice suffered by the appellant" as a result of the delay. *See Franklin*, 148 F.3d at 457. "In examining the totality of the circumstances of the case, our inquiry focuses on the necessity of the delay, giving proper consideration 'to the purpose behind [§ 3161(h)(7)]) ) accommodating the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Bieganowski*, 313 F.3d at 283 (quoting *Franklin*, 148 F.3d at 457). "With respect to the prejudice analysis, relevant considerations include whether the delay impaired the appellant's ability to defend himself or resulted in excessive pretrial incarceration." *Franklin*, 148 F.3d at 457. "Given the fact-intensive nature of the reasonableness inquiry, we review subsection (h)(7) exclusions on a case-by-case-basis." *Bieganowski*, 313 F.3d at

283.

Consideration of all of the relevant circumstances in this case warrants the conclusion that the seven-week period following Turner's guilty plea was not a "reasonable period of delay" excludable under § 3161(h)(7). Most importantly, the delay was not necessary to serve the purpose of § 3161(h)(7). "There is a preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United States*, 506 U.S. 534, 537 (1993), and prior to Turner's guilty plea, "the utility of a joint trial [wa]s particularly compelling" in this case because Turner and Stephens were charged with a single conspiracy, *see Franklin*, 148 F.3d at 457. When the district court accepted Turner's guilty plea, however, the possibility of a joint trial of Turner and Stephens was substantially reduced, if not eliminated.[11]

To be sure, the mere fact that Turner entered a guilty plea did not completely eliminate the possibility of a joint trial with Stephens, as Turner could have withdrawn his guilty plea and proceeded to trial. However, the circumstances of this case, and the terms of Turner's plea agreement in particular, made it highly unlikely that Turner would be able to withdraw his guilty plea in time to proceed to trial with Stephens. Following the court's acceptance of his guilty plea, Turner did not have an absolute right to withdraw that plea. *See United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003). Rather, Turner could have withdrawn his guilty plea only if the court rejected his plea agreement or if he could show "a fair and just reason for requesting the withdrawal" of the plea. *See* FED. R. CRIM. P. 11(d)(2). One of the conditions of Turner's plea agreement was that he provide truthful testimony in any trial where such testimony was relevant. One such trial was that of

---

[11] The district court appears to have recognized as much when it determined that Turner's guilty plea rendered Stephens's severance motion moot.

Stephens, which was scheduled to occur before Turner's sentencing. Indeed, each time Stephens's

trial date was postponed, the government moved to continue Turner's sentencing date until after

Turner testified at Stephens's trial, so that the court would know whether Turner had complied with

the terms of the plea agreement before deciding whether to accept or reject it. Although the district

court was certainly entitled to delay the acceptance of Turner's plea agreement while waiting to see

whether Turner fulfilled the conditions of the agreement, the delay did *not* serve to preserve the

possibility of a joint trial of Turner and Stephens. To the contrary, the fact that the court did not

intend to accept or reject the plea agreement until Turner's sentencing)) which was not scheduled

to occur until *after* Turner testified at Stephens's trial)) made it extremely unlikely that a need for

Turner to go to trial would arise before Stephens's trial took place and, hence, that a joint trial would

ever occur. Tolling Stephens's speedy trial clock pending the court's acceptance or rejection of

Turner's plea agreement was therefore wholly unnecessary to achieve the purpose behind

§ 3161(h)(7)) facilitating the efficient use of prosecutorial and judicial resources by enabling joint

trials. *See Franklin*, 148 F.3d at 457.[12] Although there may be cases where delay resulting from a

court's post-guilty plea consideration of codefendant's plea agreement is necessary to preserve the

possibility of a joint trial, this is not such a case.

Stephens's assertion of his speedy trial rights and the overall length of the delays attributable

to Turner, during which time Stephens remained in prison without bond, are circumstances that

further indicate that tolling Stephens's speedy trial clock while the court delayed its acceptance of

---

[12] We note that a contrary ruling would mean that a defendant's trial could be postponed indefinitely any time a codefendant pleads guilty pursuant to a plea agreement that calls for him to testify at the defendant's trial and the district court defers acceptance of that plea agreement until the codefendant's sentencing. The purpose of § 3161(h)(7) of the Speedy Trial Act does not countenance such a rule.

Turner's plea agreement was unreasonable. Long before Turner's guilty plea, Stephens filed a motion to sever his case, upon which the district court never ruled. Thereafter, Stephens filed a *pro se* petition for a writ of habeas corpus, in which he expressly asserted that his rights under the Speedy Trial Act were being violated. Again, the district court did not rule upon Stephens's motion. When Turner subsequently pleaded guilty, Stephens's trial had already been delayed for fifteen months due to Turner's mental competency proceedings. Although Stephens filed several of his own motions that tolled the speedy trial clock for much of that period, at least four months of the fifteen-month delay were not attributable to Stephens's motion practice. Thus, the seven-week period when Turner's plea agreement was "under consideration," though not terribly lengthy when considered in isolation, followed on the heels of another long delay caused not by Stephens but by Turner. Thus, the overall length of the delay, along with Stephens's prior invocation of his right to a speedy trial, weigh in favor of finding the delay unreasonable.

After examining the totality of the circumstances of this case, focusing particularly on the necessity of the delay as it pertains to the purpose behind § 3161(h)(7)) ) enabling joint trials) ) we hold that it was not reasonable for Stephens's speedy trial clock to be tolled while the district court delayed the acceptance of Turner's plea agreement.[13] Consequently, the seven-week period from April 11, 2002 to May 30, 2002 is not excludable for reasons associated with Turner's guilty plea. Unless this period is excludable for some other reason, Stephens's speedy trial clock exceeds the seventy non-excludable days permitted under the Speedy Trial Act. We must therefore consider the

---

[13] Because we conclude that the totality of the circumstances prior to trial rendered the delay unreasonable, we need not decide whether any prejudice Stephens may have suffered from the delay also rendered it unreasonable. *See Franklin*, 148 F.3d at 457 (explaining that the reasonableness of a codefendant's delay can be measured either by the totality of the circumstances *or* by the prejudice to the defendant).

government's argument that another event) ) Stephens's January 25, 2001 severance motion) ) tolled the speedy trial clock until the superseding indictment was filed against him on May 30, 2002.

Section § 3161(h)(1)(F) ("Subsection F") excludes delay resulting from the filing of a pretrial motion through the conclusion of the hearing on, or other prompt disposition of, the motion. 18 U.S.C. § 3161(h)(1)(F). Section 3161(h)(1)(J) ("Subsection J") provides for the exclusion of up to thirty days after the court takes a pretrial motion under advisement. *Id.* § 3161(h)(1)(J); *see Johnson*, 29 F.3d at 942. In *Johnson*, we clarified how Subsections F and J operate. *See Johnson*, 29 F.3d at 942-45 (applying *Henderson*, 476 U.S. at 328-31). We explained that when a motion requires a hearing, Subsection F operates to toll the speedy trial clock from the date the motion is filed through the date that the court holds a hearing on the motion. *Id.* at 942-43. Subsection F also implicitly excludes "that time after a hearing needed to allow a trial court to assemble all papers reasonably necessary to dispose of the motion, *e.g.*, the submission of post-hearing briefs." *Id.* at 943. At that point, the court is deemed to have taken the motion "under advisement" and has thirty excludable days under Subsection J in which to rule. *Id.* The clock begins to tick again at the end of that thirty-day period, regardless of whether the court has ruled on the motion. *Id.*

If the motion does not require a hearing, Subsection F excludes the time needed for a "prompt disposition" of the motion, which, under Subsection J, may be no more than thirty days from the date the motion is taken under advisement. *Id.* Absent evidence to the contrary, "a motion should be considered under advisement for Speedy Trial Act purposes on the day the last paper concerning the motion at issue was filed with the court." *Id.* at 944. "Thereafter, the fact that a motion is 'pending,' or is otherwise unresolved, does not toll the Speedy Trial clock." *Id.* at 943 (footnote omitted). Applying these principles, we held in *Johnson* that several motions that were ruled on without

-14-

hearings almost a year after their filing dates did not operate to toll the speedy trial clock beyond the thirty-day "under advisement" period established by Subsection J. *Id.* at 943-45.

Relying on *Johnson*, Stephens argues that his severance motion went "under advisement" no later than May 18, 2001, when the government filed its response in opposition to the motion. Thereafter, Stephens argues, the motion tolled the speedy trial clock for the next thirty days, or until June 17, 2001. We agree with Stephens's reasoning. Because the district court did not hold a hearing on the severance motion, and because the record reflects that the last paper concerning the motion filed with the court was the government's May 18, 2001 response to the motion, the motion operated to toll the speedy trial clock only for another thirty days after May 18, 2001, or through June 17, 2001.[14] Consequently, the period from April 11, 2002 to May 30, 2002 is not excludable

---

[14] The government "acknowledges that a motion to sever that is never resolved before or at trial will only toll the clock [for] the 30 days permitted by" Subsection J, but nevertheless contends that because Stephens's severance motion "was made moot before trial and the motion was not carried up to and until trial, the motion to sever should also serve to toll the speedy trial clock up until the point of the superseding indictment." In support of this argument, the government relies on *United States v. Bermea*, 30 F.3d 1539, 1568 (5th Cir. 1994) and *United States v. Welch*, 810 F.2d 485, 488-89 (5th Cir. 1987), but its reliance on these cases is misplaced.

In *Bermea*, the district court ordered that several *James* motions be carried with the case until trial. *Bermea*, 30 F.3d at 1567. During the trial, the court heard and denied the motions. *Id.* Because the motions were specifically carried for a hearing at trial, and because the district court ultimately heard and ruled on the motions at trial, we concluded that the motions tolled the speedy trial clock throughout their pendency. *Id.* at 1568; *see also Johnson*, 29 F.3d at 944 n.8 (explaining that when a motion in limine is carried for a hearing during trial and ultimately ruled on at trial, the time between the filing of the motion and the hearing at trial is excludable under Subsection F). In this case, by contrast, there was no hearing on the severance motion, and nothing in the record indicates that the district court carried the motion for a hearing at trial. *Bermea* is therefore inapplicable.

In *Welch*, one of four codefendants filed a severance motion, which was noticed for a hearing on two separate occasions but on which a hearing never occurred. *Welch*, 810 F.2d at 488. Six months after the motion was filed, two of the defendants pleaded guilty. *Id.* The two remaining defendants, including the one who filed the severance motion, went to trial a year and a half later without a hearing or dispositive order on the severance motion. *Id.* Because nothing in the record indicated that the defendant had abandoned his severance motion or attempted unsuccessfully to

by reason of Stephens's severance motion.

In sum, the record demonstrates that neither Turner's guilty plea (and the court's subsequent "consideration" of his plea agreement) nor Stephens's severance motion rendered excludable the period from April 11, 2002 to May 30, 2002. When that seven-week period of delay is added to the sixty-nine other non-excludable days found by the district court to have elapsed on the speedy trial clock, the delays in bringing Stephens to trial far exceeded the seventy-day period authorized by the Speedy Trial Act. Consequently, the Speedy Trial Act mandates that Stephens's convictions be reversed, his sentence vacated, and the indictment against him dismissed.

B

In outlining the sanctions for a Speedy Trial Act violation, the statute leaves to the court's discretion whether to dismiss the indictment with or without prejudice. 18 U.S.C. § 3162(a)(2). "This discretion is channeled through three factors, consideration of which is mandatory: (1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, and (3) the impact of a reprosecution on the administration of the [Speedy Trial Act] and on the

---

receive a hearing on it, we concluded that the motion tolled the speedy trial clock from the date it was filed until the trial began. *Id.* Unlike the district court in *Welch*, the district court in this case never noticed the severance motion for a hearing or otherwise indicated that a hearing was required. Accordingly, under Subsections F and J, the district court had only thirty excludable days)) through June 17, 2002)) in which to rule on Stephens's severance motion. *See Henderson*, 476 U.S. at 329-30; *Johnson*, 29 F.3d at 943. To the extent *Welch* suggests that a severance motion can toll the speedy trial clock indefinitely even if a hearing is not required or held, it conflicts with *Henderson*, by which we are bound. *See Johnson*, 29 F.3d at 943 n.3 (recognizing that several cases, including *Welch*, included "general statements" that seemed to suggest that pretrial motions generally toll the speedy trial clock until they are ruled upon, but holding that because each of those cases could "be traced directly to cases in which the principles set forth in *Henderson* were strictly followed and properly applied to the facts of the case," such "general statements" in cases like *Welch* "must be limited to the facts of [those] case[s], and viewed within the context of [the] principles set forth by *Henderson*."). Thus, the government's argument that Stephens's severance motion tolled the speedy trial clock until the filing of the superseding indictment lacks merit.

-16-

administration of justice." *United States v. Martinez-Espinoza*, 299 F.3d 414, 418 (5th Cir. 2002). Stephens notes that "[o]ur usual practice is to remand for the district court to consider the factors," *id.*, and argues that this case fits into the usual pattern. We agree. Accordingly, we remand the case for the district court to determine whether dismissal should be with or without prejudice, giving proper consideration to the factors set forth in 18 U.S.C. § 3162(a)(2).

III

For the foregoing reasons, we reverse Stephens's convictions, vacate his sentence, and remand for the district court to determine whether the indictment should be dismissed with or without prejudice. Accordingly, we do not reach Stephens's other arguments on appeal.

REVERSED AND REMANDED.