NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0758n.06
Filed: October 25, 2007

No. 05-4464

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | ON APPEAL FROM THE |
| | : | UNITED STATES DISTRICT COURT |
| v. | : | FOR THE NORTHERN DISTRICT OF |
| | : | OHIO |
| | : | |
| SHAUNA BARRY-SCOTT, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |
| | : | |

BEFORE: GIBBONS and McKEAGUE, Circuit Judges; and BERTELSMAN, District Judge[*].

WILLIAM O. BERTELSMAN, District Judge:

Defendant-Appellant Shauna Barry-Scott challenges the constitutionality of her

conviction on the grounds that she was denied her rights of confrontation and compulsory

process under the Sixth Amendment to the United States Constitution. She also argues that the

judge who issued the search warrant for her residence was not neutral and detached so that the

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern
District of Kentucky, sitting by designation.

1

search conducted pursuant thereto was unconstitutional and the evidence found during the search should have been excluded. For the following reasons, we affirm.

## I.

For the sake of clarity, a brief description of the relevant persons in this matter is provided. Barry-Scott was arrested on drug charges following an investigation that included controlled buys. Lamont Westin is a confidential informant who made the controlled buys from Barry-Scott. Cornell Kennedy is the boyfriend of Barry-Scott's adult daughter, Akia Hutchins.

Judge John Durkin is the Mahoning County Common Pleas Judge who issued the warrant for the search of Barry-Scott's house. While in private practice, Durkin represented Barry-Scott and her husband, Scott Lester, on similar but unrelated charges.

Officer Jeffrey Solic is an Austin Township Police Officer who was in charge of the "sting" and monitored the confidential informant.

The facts of this case show that, between January 27, 2003 and April 21, 2003, Lamont Westin, acting as a confidential informant and at the direction of Officer Solic, made multiple controlled buys of cocaine base (crack) from Barry-Scott at her residence. Evidence regarding the controlled buys was summarized by Officer Solic in the affidavit submitted in support of a search warrant for Barry-Scott's residence. The search occurred on April 24, 2003, three days after the last controlled buy, and it resulted in the seizure of 124.73 grams of cocaine base and $9,000.00 in cash. The search also revealed an additional $1,531.00 in cash in Barry-Scott's bra. Some of these bills matched the marked bills used in the controlled buys.

On September 29, 2004, a federal grand jury returned a single-count indictment charging Barry-Scott with possession with intent to distribute 120 grams or more of cocaine base.

2

On April 18, 2005, the morning before trial was to begin, a suppression hearing was held. Barry-Scott had filed motions in limine seeking to exclude certain testimonial statements not subject to cross-examination. She also requested a writ of habeas corpus ad testificandum for Cornell Kennedy, who was incarcerated in Omaha, Nebraska. Barry-Scott argued that Kennedy's testimony was necessary because Kennedy allegedly made statements against interest at the time of the search. The court noted, however, that despite the opportunity to interview Kennedy, defense counsel never did so, nor did counsel depose him. Therefore, the district court found that Barry-Scott had no knowledge of whether Kennedy, were he called to testify, would assert his Fifth Amendment privilege or deny responsibility for the drugs and money seized from Barry-Scott's residence.

The district court concluded that Barry-Scott's request was an attempt to conduct a fishing expedition because there was no evidence that Kennedy would offer any testimony that would be favorable to her. Moreover, the court noted that in a pretrial interview, Kennedy stated that he did not know anything about the drugs that were seized. Barry-Scott, however, argued that additional facts indicated Kennedy was not being truthful with the interrogating officer and that he did know something about the drugs involved.

The district court also held that the defense could call other witnesses to testify that Kennedy made statements against interest in connection with the search, regardless of whether Kennedy testified at trial. The district court decided that it would not incur the expense and security risk of having Kennedy transported from Nebraska when defense counsel had never talked to Kennedy and could not offer any evidence as to what he was going to say.

Barry-Scott also moved to exclude testimony from Officer Solic regarding Westin's

controlled buys from Barry-Scott because Westin was unavailable to testify at trial. The Government advised that it had tried to locate Westin but could not. The Government also advised that it would not introduce the recordings of the controlled buys into evidence at trial. The Government argued that the recordings would not have to be relied upon because the police conducted surveillance at the buy location, they monitored transmissions of the transactions in real time, and they dropped Westin off and picked him up immediately after the transactions. Therefore, the Government argued that they would not have to rely upon Westin's statements about what occurred. The court permitted Officer Solic to testify about the investigation upon which the search warrant was based, what Solic personally heard and observed during the transactions, and the procedures employed for the controlled buys.

At the suppression hearing, Barry-Scott argued that the search warrant was invalid because the issuing judge, Durkin, had previously represented Barry-Scott and her husband in drug-related cases, although he had not represented them since March of 1995. The district court concluded that the affidavit established probable cause to conduct a search and that Durkin's prior representation was not enough to establish a conflict of interest. Moreover, and regardless of the alleged bias, the district court held that the evidence seized fell within the *Leon* good faith exception to the warrant requirement.

The case proceeded to trial. In the Government's case-in-chief, Officer Solic testified about the controlled buys made by Westin. Six buys were made between January and April of 2003. Westin was provided money that had been photocopied. Police then placed a body transmitter and recording device on Westin and took him to a school parking lot a block from Barry-Scott's residence. The police maintained surveillance while Westin was inside the

4

residence and listened to the transactions live. After the transactions, Westin met police at the drop-off location and was searched for money and drugs, as he had been before he was taken to the drop-off location.

During another transaction, Officer Solic visually identified Barry-Scott when she sold crack to Westin from her black Pontiac Grand Prix. Solic testified that he identified Barry-Scott at the time of the buys based upon her driver's license and that he could also identify her voice during the live transmission of the transactions.

Based upon the controlled buys, the police obtained a search warrant for Barry-Scott's residence. During the search, police seized 124.73 grams of crack cocaine and $9,000.00 from the bedroom of Barry-Scott's daughter, Akia Hutchins. Police also seized $1,531.00 from Barry-Scott's bra, a portion of which matched some of the buy money serial numbers from transactions with Westin. Defense counsel specifically questioned Officer Solic about Westin's statements. The Government asserted that Westin could not be located to testify at trial.

Defense counsel objected to the admission of some of the Government's exhibits and to evidence of the drugs related to the purchases made by Westin, because Westin was not present during the trial. The district court overruled these objections.

Hutchins testified during the defense's case-in-chief. She stated that she lived with her mother at the time of the search and that she had a child with Cornell Kennedy, who sometimes stayed overnight at the residence. Hutchins testified that Kennedy would bring money to the residence and that she would help him count it.

Hutchins further testified that a couple of months before the search, she counted the $9,000.00 that was seized from her bedroom. She also testified that the money belonged to

5

Kennedy. Hutchins testified that Kennedy said that he was not going to let her and her mom take the blame and that he was going to have to take a loss on the money that was seized. Hutchins also knew where her mother kept the crack that was sold to Westin.

Barry-Scott's other daughter, Lestacia Scott, testified that Kennedy also told her that he had drugs and money in the house and that he would not let somebody else take the blame for them. Similar testimony was given by Dominic Brown, a family friend, who was outside of the house at the time of the search. The testimony of these three witnesses was emphasized by defense counsel during his closing argument.

At the close of the trial, on April 20, 2005, the jury found Barry-Scott guilty on count one of the indictment. On October 18, 2005, Barry-Scott was sentenced to 240 months' incarceration, plus 10 years of supervised release. Her notice of appeal was timely filed on November 1, 2005.

## II.

Barry-Scott argues in this appeal that she was denied her rights under the Confrontation Clause as guaranteed by the Sixth Amendment to the Constitution because Westin, the confidential informant, was not called to testify, and the court would not postpone the trial or issue a warrant to secure his attendance at trial.

The United States argues that Officer Solic's testimony about what Westin told him was not offered for the truth of the matter asserted but rather only as background as to how the investigation developed. Therefore, it did not violate the Confrontation Clause. The United States further argues that, even if there was a Confrontation Clause violation, the error was

harmless because there was sufficient other evidence to convict Barry-Scott, including the testimony of her daughter; the testimony of Officer Solic, who detailed the process of the investigation; and the fact that the money found in Barry-Scott's bra matched the buy money given to Westin.

Confrontation Clause issues regarding the unavailability of a witness and the reasonableness of the efforts to produce the witness are mixed questions of law and fact which this court reviews de novo. *Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007) (citations omitted). Confrontation Clause challenges to the admission of hearsay statements against the accused are reviewed de novo. *United States v. Johnson*, 440 F.3d 832, 842-43 (6th Cir. 2006) (citing *United States v. Pugh*, 405 F.3d 390, 397-99 (6th Cir. 2005)).

The Sixth Amendment Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This is a "bedrock procedural guarantee" that applies to both state and federal prosecutions. *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citation omitted). The principal evil at which the Confrontation Clause is directed is the use of *ex parte* examinations as evidence against the accused. *Id.* at 50. "[T]he clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61. The Court in *Crawford* reviewed the history of the Confrontation Clause and stated that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Id.* at 59.

7

In *Crawford*, the Supreme Court distinguished between two types of hearsay evidence against the accused: testimonial and nontestimonial. *Id.* at 68. The Confrontation Clause protections apply to both types, but different factors determine whether or not the admission of the hearsay statements is constitutional. *Id.* The Court held that statements taken by police officers in the course of interrogations are testimonial and, specifically as to that case, the declarant's recorded statement, knowingly given in response to police questioning, qualified under the definition of testimonial hearsay. *Id.* at 53, n. 4. Also held to be testimonial is prior testimony at a preliminary hearing, before a grand jury, or at a former trial. *Id*. at 68. [1]

To determine whether or not the disputed statements are testimonial, "[t]he proper inquiry, then, is whether the *declarant* intends to bear testimony against the accused. That intent, in turn, may be determined by querying *whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.*" *Johnson*, 440 F.3d at 843 (quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004)). The question here is thus whether a person in Westin's position would anticipate his statements being used against Barry-Scott in a criminal prosecution or investigation. *Id*.

The final part of this Confrontation Clause analysis is that, if there was an evidentiary error, it must be determined whether said error was harmless. *United States v. Baker*, 458 F.3d 513, 520 (6th Cir. 2006) (citing *United States v. Pugh*, 405 F.3d 390, 400 (6th Cir. 2005)). "'In determining whether an error is harmless, the reviewing court must take account of what the error

---

[1]Although not determinative of the Confrontation Clause issue presented in this appeal, in *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006), this court recognized that where statements at issue are nontestimonial hearsay, the decision of *Ohio v. Roberts*, 448 U.S. 56 (1980), is still controlling. *Johnson,* 440 F.3d at 844. *Crawford* abrogated *Roberts*' holding as to out-of-court testimonial statements. *Crawford*, 541 U.S. at 68.

meant to [the jury], not singled out and standing alone, but in relation to all else that happened . . . . In other words, we must find that it was more probable than not that the error materially affected the verdict.'" *Id.* (quoting *Pugh*, 405 F.3d at 400-01).

Barry-Scott argues that her Confrontation Clause rights were violated when the confidential informant, Westin, was not produced for cross-examination and Officer Solic was permitted to testify as to what he heard Westin say to Barry-Scott during the investigation. Out-of-court statements were permitted to be used against her, she argues, when she was not given an opportunity for cross-examination. The Government responds that the Confrontation Clause was not violated because the testimony was not hearsay as it was not offered for the truth of the matter asserted but instead was offered only to prove the procedures of the investigation.

This court has reviewed the entire trial transcript as well as the transcripts of the hearings on the motion to dismiss and the motion to continue. Overall, it is evident that Barry-Scott received a fair trial. It is also evident, however, that there were both testimonial and nontestimonial statements by Westin that came into evidence through the testimony of Officer Solic.

Some of the out-of-court statements about which Barry-Scott complains do not present Confrontation Clause problems because they are not hearsay because the declarant's testimony was not being used for the truth of the matter asserted. Rather, Officer Solic was testifying as to his personal knowledge that the statements were, in fact, made. Officer Solic personally heard the statements as they were being made, and they were introduced to explain the investigation process and procedure. These statements were not being offered for the truth of the matter that drugs were being purchased. As to these statements, Barry-Scott has no viable Confrontation

9

Clause challenge.

It appears, however, that some of the statements were testimonial in that they were given to police as part of interrogation or questioning of Westin following the buy transactions. *Crawford* clearly holds that statements resulting from police questioning are testimonial. *Crawford,* 541 U.S. at 53. The only purpose of the statements by Westin to the police officers was that those statements be used against the accused in investigating and prosecuting the crime. Therefore, Westin's statements to the officers fit the definition of testimonial out-of-court statements as established in *Crawford* and *Johnson*. *See Cromer*, 389 F.3d at 670-71.

Westin engaged in six different controlled drug transactions with Barry-Scott. All were monitored live by Officer Solic as well as audiotaped. Most of the officer's testimony about what Barry-Scott said and did was based on his own first-hand visual observations and audio monitoring. He did, however, testify that Westin "gave [him] the name and basically the standard of how he would" make a buy, "and he advised he could make controlled drug buys of crack cocaine and/or cocaine from the Defendant, Shauna Barry-Scott, who's seated at the defense table here." (JA 28, 195). Westin also purportedly confirmed Barry-Scott's identity from a copy of her driver's license photo. (JA 28). While this information, including the reference to Westin's "standard" or "normal procedure" for procuring drugs from Barry-Scott, could be seen as substantive evidence of Barry-Scott's involvement in drug deals, it is better viewed as simply background for the officer's subsequent discussion of the various controlled drug transactions, given that the references were brief and were made near the beginning of the officer's testimony.

More problematic is another statement attributed to Westin. When describing the second

controlled buy, Officer Solic testified that Westin "indicated Ms. Scott was on the way to drop off the additional crack cocaine." (JA 31). This was immediately bolstered by the officer's testimony that he saw a car registered to Barry-Scott drive up to Westin, and, after Westin entered the car, the officer heard Westin talking with Barry-Scott about purchasing crack cocaine. (JA 31-32). Westin's statement thus placed Barry-Scott at the scene of the second controlled purchase.

Even more troubling, the Government made several references in its closing argument to statements purportedly made by Westin. At one point, it referred to Westin's statement to Officer Solic that "for the informant to buy drugs from [the defendant], he can only go buy what he normally would buy. He said the most he could afford was 10 bucks. He can't go buy anymore." (JA 47). The Government offered this statement to explain why the confidential informant's controlled purchases were for relatively small amounts of crack cocaine. *Id.* A few moments later, the Government asserted, "we know that the confidential informant contacted that person [ i.e. the defendant] and told Sergeant Solic that's who it was." (JA 49). This last statement clearly implicated Barry-Scott as the drug dealer. Finally, near the end of its closing, the Government tried to bolster the actions and statements of the confidential informant: "There's no question that all those controlled buys took place. That's not an issue. The informant's reliability is not an issue. It's been corroborated by their own witness [the defendant's daughter]." (JA 51).

These statements attributed to Westin do appear to have been proffered to prove the truth of the matter asserted, rather than simply as background. There being no question that Barry-Scott did not have an opportunity to cross examine the confidential informant, the statements

11

should have been excluded, and Barry-Scott's Sixth Amendment right to confrontation was violated.

However, despite this violation, Barry-Scott's appeal on this issue ultimately fails because any error of the district court was harmless. When considering the evidence, it is clear it was sufficient to convict Barry-Scott without the testimony concerning Westin's statements. The evidence before the jury included the officer's personal observations, the matching buy money, and the testimony of Barry-Scott's daughter that she knew where her mother kept the drugs. The error was thus harmless, and we will not disturb the verdict on this basis.

**III.**

Barry-Scott next argues that the district court violated her Sixth Amendment right to compulsory process by failing to grant a continuance and compel the attendance of two witnesses: Westin, the confidential informant, and Kennedy, the daughter's boyfriend who allegedly stated that the money and drugs belonged to him. The Government argues that these challenges fail because there is nothing to show that the testimony would have been beneficial to Barry-Scott. Moreover, these issues, the Government asserts, were raised for the first time on appeal, there is no plain error, and the absence of the witnesses did not affect Barry-Scott's substantive rights.

The standard of review of a motion to grant or deny a motion for a continuance in order to secure the attendance of a witness is abuse of discretion. *United States v. Thomas,* 29 Fed. Appx. 241, 246 (6th Cir. 2002) (citation omitted). An abuse of discretion will be found only when the court exhibits "an unreasonable and arbitrary insistence" on the speed of the trial when faced with a justifiable request for a delay. *Id.* "Prejudice requires a showing that a continuance would

12

have made a relevant witness available or added something to the defense." *Id.* at 246-47. "'[M]ore than mere absence of testimony is necessary to establish a violation of the right to [compulsory process] . . . .[The defendant] must at least make some plausible showing of how [the witness's] testimony would have been both material and favorable to his defense.'" *Cunningham v. Stegall*, 13 Fed. Appx. 286, 290 (6th Cir. 2001) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866-67 (1982)).

The compulsory process guarantee of the Sixth Amendment provides that all criminally accused shall have the right to compulsory process for obtaining witnesses in his favor. *Thomas,* 29 Fed. Appx. at 247 (citations omitted). The factors considered by appellate courts in determining whether a right to compulsory process has been denied include "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Id.* (quoting *Bennett v. Scroggy*, 793 F.2d 772, 774 (6th Cir. 1986)).

This case is similar to *Thomas*, 29 Fed. Appx. at 247. The law as stated in the *Thomas* opinion is directly applicable here in that Barry-Scott asserts that the district court erred when it denied her motion for a continuance and failed to secure the presence of two witnesses, either by compulsory process or writ of habeas corpus ad testificandum.

The court in *Thomas* found that where counsel for the defendant failed to timely file subpoenas or served them late, where the relevance of the testimony was determined to be marginal, where several delays had already been granted in order to locate several witnesses, and

13

where counsel never requested the court's assistance in compelling the witnesses, the district court had not abused its discretion in denying the motion for a continuance. *Id.*

Applying these factors to the instant case, Barry-Scott has not shown that either Westin or Kennedy's testimony, if presented, would have been beneficial to her or would have aided in her defense. Westin, of course, was the confidential informant against Barry-Scott and presumably would not have provided testimony in her favor. Arguably, to have had him available for cross-examination might have aided her defense. However, she has failed to show that his absence affected her substantial rights, especially in light of the more-than-sufficient evidence of her guilt.

With regard to Kennedy, the boyfriend of Barry-Scott's daughter, Barry-Scott argues that he could have testified that the money and drugs belonged to him. Defense counsel had not interviewed Kennedy nor taken his deposition. In response to defense counsel's request for a writ for Kennedy, the district court stated: "You can probably offer that testimony during trial from those other witnesses, but you don't need to put him on to deny it. We won't go through the expense – first of all, you could have taken his deposition and didn't do it; secondly . . . we are not going through the risk of having him brought here and the expense of having him brought here, when you have never talked to him, and that you can't offer anything as to what he's going to say."

This ruling is a correct application of the law to the facts of this case and is consistent with the factors as stated in *Thomas*. Therefore, the decision of the district court was not an abuse of discretion.

**IV.**

Barry-Scott also appeals the district court's denial of her motion to suppress the search of her residence, arguing that the judge who issued the warrant was not neutral and detached because he previously represented her and her husband around 1994-95 and was aware of their drug activities.[2] The Government argues that the judge was sufficiently neutral and detached and, in any event, the good faith exception would apply even if the warrant were lacking.

This court reviews the district court's findings of fact in a suppression hearing under the clearly erroneous standard, while its conclusions of law are reviewed de novo. *Untied States v. Parker*, 373 F.3d 770, 771 (6th Cir. 2004) (citations omitted).

There are two categories of cases that address the neutral and detached requirement. *United States v. Bowers*, 828 F.2d 1169, 1174 (6th Cir. 1987). The first category includes those cases that state that the Fourteenth Amendment "would be violated by subjecting a person's liberty or property 'to the judgment of a court, the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case.'" *Id.* (quoting *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). The second category of cases is based on the requirements of the Fourth Amendment and emphasizes the need for severance and detachment of the magistrate from the activities of law enforcement. *Id.* at 1175. *See also Parker*, 373 F.3d at 773; *United States v. Bennett*, 170 F.3d 632, 637 n. 3 (6th Cir. 1999).

Where the warrant is lacking due to the judge's failure to act in a neutral and detached manner, however, the evidence seized pursuant to a defective warrant may still be admissible if it

---

[2]In her *pro se* supplemental brief, Barry-Scott characterizes the judge as a close personal friend, but the evidence from the suppression hearing does not support such an inference.

fits within the requirements of the good faith exception to the exclusionary rule. *United States v. Caldwell,* No. 99-5465, 2000 WL 1277011, at \*6 (6th Cir. Aug. 30, 2000) (citing *United States v Leon*, 468 U.S. 897, 922 (1984)). In such circumstances, the evidence is admissible if it was reasonable for the officers executing the warrant to rely upon the judge's authorization in good faith. *Id.*

In this case, the evidence seized is admissible because the record does not establish that the judge was not neutral and detached and, even if he were not, the warrant was sufficiently grounded in probable cause for the officers to reasonably rely upon it. Barry-Scott has not shown that the judge had any specific personal knowledge of her or her husband that was detrimental to her or that had any impact on his issuance of the warrant. Neither has Barry-Scott shown that the judge had a personal, pecuniary or substantial interest in the outcome of the search or that he was too closely tied to the functions of law enforcement. Without such evidence, there is nothing to suggest that the judge abandoned his role as a neutral and detached judicial officer. Thus, the decision of the district court based upon these same factors was not clearly erroneous.

However, even if it were shown that the judge was not neutral and detached, the good faith exception to the exclusionary rule would apply. The warrant was based upon a three-month investigation that included controlled buys, which were recorded and some of which were witnessed by the officer requesting the warrant. The warrant on its face, to a reasonable officer, was sufficient to support a finding of probable cause.

Moreover, the officer requesting the warrant and the officers executing the warrant were not aware of the former attorney-client relationship between Barry-Scott and the judge. The alleged bias thus could not have impacted the officers' activity. Again, the decision of the

16

district court was not clearly erroneous, and Barry-Scott's appeal on this issue fails.

**V.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.