# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 21, 2009

Charles R. Fulbruge III
Clerk

No. 08-40137

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

SHANNON KEITH HARRIS

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Defendant-Appellant Shannon Keith Harris ("Harris") claims that his statutory and constitutional rights to a speedy trial were violated because his trial began over three years after his initial appearance in court. He also contends that the district court erred in denying his motion to suppress evidence, that the jury verdict was based on insufficient evidence, and that he received a life imprisonment sentence in violation of the Eighth Amendment. For the following reasons, we affirm.

## FACTS AND PROCEEDINGS

Harris was arrested in the course of a narcotics investigation conducted by the Brazoria County Sheriff's Department. A confidential police informant purchased crack cocaine from Harris on two occasions in May and July 2003; both times, Dale Marie Kubin, Harris's common-law wife, delivered the drugs to the informant. Based on these transactions, Officer Ruben Gonzalez obtained a search warrant in July 2003 from a Texas District Court Judge, which authorized the search of Harris's house and Harris's auto detail shop for drugs and items related to illegal drug activity.

On July 11, 2003, Officers Randall Rhyne and James Gayle were on the search team in charge of executing the warrant. A surveillance team led by Gonzalez informed them that Harris was at his auto detail shop. As Rhyne and Gayle drove towards the shop in an unmarked vehicle, they were notified that Harris had apparently realized that he was being watched and was leaving the shop. Rhyne and Gayle spotted Harris as he was driving away in a pick-up truck and followed him. They observed Harris driving erratically at excessive speeds and running several stop signs. They then activated their vehicle's front lights and held their badges out the windows while yelling for Harris to stop, but Harris did not immediately comply. Eventually, Harris turned into a private driveway and stopped his truck. Rhyne and Gayle ordered him out of the truck and arrested him. Shortly thereafter, other police units that had been following them arrived at the scene.

Several police units then drove with Harris to his residence in order to execute the search warrant. Rather than leave Harris's truck behind, Gayle also drove it to the residence to be inventoried. While the officers were searching the

residence, a drug-sniffing dog was brought to the truck. The dog alerted to the driver's side door, from which a bag was removed that contained a loaded revolver. Officers recovered another loaded pistol in an SUV owned by Harris and parked in the garage attached to his residence. Finally, while searching a room off of the back the garage, the police found crack cocaine and other narcotics, various drug paraphernalia, a third firearm, and marked money that the police informant had used to pay Kubin.

Harris was charged with federal firearms and narcotics offenses on October 28, 2003, and made his initial appearance with counsel on November 20, 2003. On December 17, 2003, a first superceding indictment was filed, adding a conspiracy count against Harris and charging Kubin with conspiracy and possession with intent to distribute cocaine base. On January 9, 2004, Harris was arraigned on the first superceding indictment and received a trial date of March 8, 2004.

Starting in February 2004, however, Harris filed numerous pretrial motions, including several motions to continue his trial. For purposes of Harris's speedy trial argument, particularly relevant is Harris's motion to suppress, filed December 1, 2004, for which a hearing was conducted on February 24, 2005. The magistrate judge issued his report and recommendation on April 12, 2005, and the district court denied the motion on May 12, 2005. In the meantime, Harris had filed a motion requesting a change of counsel on April 26, 2005, and was appointed a new counsel on May 12, 2005. At a status conference on June 9, 2005, Harris's newly-appointed defense counsel again moved for a continuance in order to review the case and prepare for trial.

Another round of pretrial motions, principally filed by Harris, further delayed the start of the trial. In August 2006, Harris moved to dismiss the indictment on speedy trial grounds, but the district court did not rule on the motion immediately. Harris's trial finally started on April 9, 2007. By that time, Kubin had pleaded guilty to the charges against her, and a second superceding indictment that no longer included Kubin had been filed against Harris. On April 11, 2007, the jury returned a guilty verdict on all counts, convicting Harris of possession of a firearm by a felon, possession of a firearm in furtherance of a drug trafficking crime, conspiracy to possess with intent to distribute fifty grams or more of cocaine base, and possession with intent to distribute fifty grams or more of cocaine base. On December 6, 2007, the district court denied Harris's motion to dismiss the indictment.

With respect to sentencing, the Pre-Sentence Report ("PSR") noted Harris's lengthy criminal history, including several felony drug convictions; it recommended a mandatory term of imprisonment for life pursuant to 21 U.S.C. § 841(b)(1)(A). Harris filed objections to the PSR, arguing that given the lack of severity of his prior offenses, the application of a mandatory life sentence enhancement constituted cruel and unusual punishment under the Eighth Amendment. The district court overruled Harris's objections and adopted the PSR. Harris eventually received a mandatory life sentence on the two narcotics charges, to be served concurrently with a 120-month sentence and followed by a consecutive 60-month sentence for the two firearm possession charges.

## DISCUSSION

### A. Speedy Trial Claims

#### a. Statutory Claim

Harris contends that the district court erred in denying his motion to dismiss the indictment under the Speedy Trial Act. "We review the factual findings supporting a Speedy Trial Act ruling for clear error and the legal conclusions *de novo*." *United States v. Parker*, 505 F.3d 323, 326 (5th Cir. 2007) (internal quotation omitted). "The Speedy Trial Act, which is designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing prompt criminal proceedings, requires that a defendant's trial commence within seventy days from his indictment or initial appearance, whichever is later." *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007); *see also* 18 U.S.C. § 3161(c)(1).

In this case, over three years passed between Harris's first appearance in court with counsel in November 2003 and the commencement of his trial in April 2007. Harris concedes that this time period contains several periods of delay that are excludable from speedy trial calculations under § 3161(h). Nevertheless, he claims that, because more than seventy non-excludable days elapsed from his initial appearance until his trial, the Speedy Trial Act was violated.

First, the parties disagree as to the appropriate starting point for the speedy trial clock. The government argues that the statutory exclusion for "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted" tolls the seventy-day period until January 9,

2004—the date of the arraignment on the first superceding indictment joining Kubin as a co-defendant. 18 U.S.C. § 3161(h)(6). Indeed, under this exclusion, "the speedy trial clock does not begin to run in a multi-defendant prosecution until the last codefendant makes his initial appearance in court." *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998). According to Harris, however, the speedy trial clock began ticking as early as November 20, 2003—the day he first appeared in court with counsel. Harris relies on this court's analysis of the effect of a superceding indictment in *United States v. Bermea*:

> The filing of a superseding indictment does not affect the speedy trial clock for offenses charged in the original indictment or any offense required to be joined under double jeopardy principles. The clock continues to run from the original indictment or arraignment, whichever was later, and all speedy trial exclusions apply as if no superseding indictment had been returned.

30 F.3d 1539, 1567 (5th Cir. 1994) (internal quotations and citations omitted).

"The fundamental fear we identified in *Bermea* was the government's 'circumventing the speedy trial guarantee through the simple expedient of obtaining superseding indictments with minor corrections.'" *Parker*, 505 F.3d at 327 (quoting *Bermea*, 30 F.3d at 1567). This court has recognized that the "case presents a different profile" when the government seeks to "widen the scope of the criminal investigation so as to try [other] conspirators" and is not "merely correcting the indictment." *Id*. In that case, "[t]here is no abuse of the superseding indictment system;" the starting point for the speedy trial clock is thus reset to the date of the arraignment on the superceding indictment. *Id*.

In the instant case, the first superceding indictment added conspiracy charges against Harris and charged a new party, Kubin, with conspiracy and possession with intent to distribute cocaine base. As in *Parker*, the scope of

6

investigation was changed to try other conspirators, and we therefore see no risk of circumvention of the speedy trial guarantee. Accordingly, the speedy trial clock did not begin to run until Harris's arraignment on the first superceding indictment on January 9, 2004. The parties agree that the following forty-eight days constitute non-excludable delay. There is also no dispute that the speedy trial clock was stopped on February 26, 2004, when Harris sought his first continuance of trial, and did not resume running until at least March 2005 due to several other pretrial motions.

Harris contends that the speedy trial clock began running again on March 26, 2005—thirty days after the hearing on his motion to suppress—and continued running until he moved for a change of counsel on April 26, 2005. "[D]elay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on . . . such motion" is excludable for purposes of the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D). In addition, the exclusion implicitly extends to "that time after a hearing needed to allow the trial court to assemble all papers reasonably necessary to dispose of the motion, *e.g.*, the submission of post-hearing briefs." *United States v. Johnson*, 29 F.3d 940, 943 (5th Cir. 1994) (citing *Henderson v. United States*, 476 U.S. 321, 330–31 (1986)). At that point, the court has taken the motion "under advisement" and thus has thirty excludable days in which to rule under another one of the statutory exclusions, set forth in § 3161(h)(1)(H). *See id.; see also Stephens*, 489 F.3d at 656. "The clock begins to tick again at the end of that thirty-day period, regardless of whether the court has ruled on the motion." *Stephens*, 489 F.3d at 656. Relying on our reasoning in *Johnson* and *Stevens*, Harris argues that, because the district court did not rule on the motion until May 12, 2005, the

7

speedy trial clock was running between March 26, 2005 and April 26, 2005—thus exceeding the seventy-day limit set by the Speedy Trial Act.

These speedy trial calculations overlook the fact that the February 24, 2005 suppression hearing was held before a magistrate judge, who issued a report and recommendation on April 12, 2005, to which Harris later filed objections. The speedy trial effect of a magistrate judge's involvement in a pretrial motion is an issue of first impression in this court. Those circuit courts that have had occasion to consider the issue have unanimously refused "to provide the magistrate a blank check to consume unlimited time" before issuing his report and recommendation on the motion. *United States v. Long*, 900 F.2d 1270, 1275 (8th Cir. 1990); *see also United States v. Oberoi*, 547 F.3d 436, 453 (2d Cir. 2008); *United States v. Mora*, 135 F.3d 1351, 1356–57 (10th Cir. 1998). Consistent with these decisions, we hold that a magistrate judge taking a pretrial motion "under advisement" is subject to a statutory limit of thirty excludable days under § 3161(h)(1)(H).

However, we reject Harris's argument that the district court must also issue a ruling within this same thirty-day time period. Harris's argument relies on a single Seventh Circuit case suggesting that the magistrate judge and the district court should share the thirty-day excludable time under § 3161(h)(1)(H). *See United States v. Thomas*, 788 F.2d 1250, 1257–58 (7th Cir. 1986) (but noting that its discussion is "a warning signal rather than a holding"). By contrast, in the Tenth and Eleventh Circuits, the magistrate judge and the district court each enjoy an automatic thirty-day advisement period. *See Mora*, 135 F.3d at 1357; *United States v. Mers*, 701 F.2d 1321, 1336–37 (11th Cir. 1983). Other circuits have refined this analysis to take into account the ten-day statutory

delay afforded to the parties to file objections to the magistrate's report and recommendation under 28 U.S.C. § 636(b)(1). Thus, the Eighth Circuit held in *Long* that the issuance of a magistrate's report and recommendation does not immediately begin a new thirty-day advisement period for the district court; instead, it tolls the seventy-day count under § 3161(h)(1)(D) "until the district court holds a hearing or has all the submissions it needs to rule on the motions." 900 F.2d at 1275; *see also Oberoi*, 547 F.3d at 452–53. The Sixth Circuit subscribes to the *Long* approach, and specifies that, once "the parties file objections or the ten days allowed for filing objections elapse . . . a new period of excludable delay begins; *viz.*, thirty days under [§ 3161(h)(1)(H)] within which a motion may be kept under advisement." *United States v. Andress*, 943 F.2d 622, 626 (6th Cir. 1991).

We follow the approach set forth in *Long* and *Andress*, and recently adopted by the Second Circuit in *Oberoi*. Once a report and recommendation is issued, the speedy trial clock is tolled under § 3161(h)(1)(D) for a period of ten days or until objections are filed, whichever is earlier. At that point, the motion is deemed "under advisement" for another thirty-day period of excludable delay under § 3161(h)(1)(H). This framework is consistent with the purpose of the Speedy Trial Act because it subjects both the magistrate judge and the district court to specific time periods within which to rule. Yet, by providing a full thirty days for the district court to issue its ruling after all materials are filed, it also affords sufficient time for a *de novo* review of the issues to which a party objects, as required under 28 U.S.C. § 636(b)(1). Applying this approach to the instant case, we hold that the period of non-excludable delay attributable to Harris's motion to suppress totaled only sixteen days—from March 26, 2005, thirty days

after the hearing, until the issuance of the magistrate judge's report on April 12, 2005.

The remaining time period in dispute runs from May 12, 2005, when the district court denied the motion to suppress and the magistrate judge appointed Harris's new counsel, until the status conference of June 9, 2005, during which a continuance was granted at Harris's request. In his May 12, 2005 order granting Harris's motion for new counsel, the magistrate judge found that "the ends of justice served by granting the motion outweigh the best interests of the public and Harris in a speedy trial and, therefore, any resultant delay will be excluded from the Speedy Trial Act calculations." Nevertheless, Harris argues that these twenty-eight days constitute non-excludable delay and bring his case over the seventy-day limit.

The Speedy Trial Act expressly excludes from the Speedy Trial Act time limit:

> [a]ny period of delay resulting from a continuance granted by any judge *on his own motion* or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h)(7)(A) (emphasis added). The magistrate judge's order apparently grants a continuance of the case *sua sponte*, which is sufficient to trigger the exclusion. However, the statute also requires the court to set forth "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id*.

Here, the magistrate judge stated on the record its intent to exclude delay caused by Harris's change of counsel. This type of delay is envisioned by the Speedy Trial Act, which provides that, in granting an "ends of justice" continuance, the court must consider "[w]hether the failure to grant such a continuance . . . would deny counsel for the defendant . . . the reasonable time necessary for effective preparation . . . ." 18 U.S.C. § 3161(h)(7)(B)(iv); *see also United States v. Jackson*, 50 F.3d 1335, 1339 (5th Cir. 1995) (noting that, after a new counsel is appointed, the district court has discretion "to grant a continuance for trial preparation if it determines that the ends of justice so require" (citing *United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985)).

The magistrate judge's order did not expressly find that the continuance was required to allow Harris's new counsel to prepare for trial. However, in a subsequent continuance order, granted on June 10, 2005 at Harris's request, the magistrate judge clarified that the case was continued in order to allow Harris's new counsel "additional time to review his case and prepare for its disposition." In this circuit, "the *entry* of findings after granting the continuance is not reversible error so long as the findings were not actually *made* after the fact." *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002) (quotation omitted). Accordingly, the period from May 12, 2005 to June 9, 2005 was excludable delay under § 3161(h)(7).

The non-excludable delay in this case therefore totals sixty-four days—the initial forty-eight days following Harris's arraignment on the first superceding indictment plus the extra sixteen days during which the motion to suppress was under advisement by the magistrate judge. Harris's rights under the Speedy Trial Act were not violated.

### b. Constitutional Claim

Harris also contends that the pretrial delay violated his rights under the speedy trial clause of the Sixth Amendment to the United States Constitution. "The standard of review for Sixth Amendment claims is bifurcated." *Parker*, 505 F.3d at 328. We review findings of fact for clear error, but, with respect to the constitutional test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972), it is unsettled whether our review is *de novo* or for clear error. *Id.* This case does not require us to decide that question. Even if we apply a *de novo* standard of review, we conclude that Harris's Sixth Amendment rights were not violated. As a recent decision observed, "[i]t will be the unusual case . . . where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *Bieganowski*, 313 F.3d at 284. This case is no exception.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI. To determine whether a defendant's constitutional right to speedy trial has been violated, this court typically balances four factors: (1) the "[l]ength of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) the "prejudice to the defendant." *Barker*, 407 U.S. at 530. If "the first three factors weigh heavily in the defendant's favor," prejudice may be presumed. *Parker*, 505 F.3d at 328 (quotation omitted). If they do not, the defendant "must demonstrate actual prejudice." *Id.*

The length of the delay is a "triggering mechanism," as "there is no necessity for inquiry into the other factors that go into the balance" until there has been some delay that is presumptively prejudicial. *Barker*, 407 U.S. at 530.

12

Generally, when, as here, more than one year has passed before commencement of trial, the delay is deemed presumptively prejudicial under this threshold inquiry and "this court undertakes a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *Parker*, 505 F.3d at 328 (internal citation omitted)." However, "delays of less than five years are not enough, by duration alone, to presume prejudice." *Id*. at 328–29. This factor therefore does not weigh in Harris's favor. *See id*. at 329.

"In examining the reasons for the delay, we must heed the Supreme Court's warning that 'pretrial delay is often both inevitable and wholly justifiable.'" *United States v. Neal*, 27 F.3d 1035, 1043 (5th Cir. 1994) (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). This principle applies fully when, as here, the delay was largely a result of Harris's myriad pretrial motions, including numerous requests for continuances. *See id*. Further, Harris has presented no evidence that "the Government act[ed] in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant." *Parker*, 505 F.3d at 329 (quoting *United States v. Hernandez*, 457 F.3d 416, 421 (2006)). The second factor therefore cuts strongly against Harris.

The third factor, the defendant's diligence in asserting his speedy trial right, requires a showing that Harris "manifest[ed] his desire to be tried promptly." *United States v. Frye*, 489 F.3d 201, 212 (5th Cir. 2007) (internal quotation omitted). A motion to dismiss the indictment, particularly when, as here, it is filed over two years after the indictment, is not evidence of such a desire. *See id*. Rather, an assertion of speedy trial rights generally takes the form of "an objection to a continuance or a motion asking to go to trial." *Id*. at 211. Harris has pointed to no such evidence in the record, and his numerous

requests for continuances hardly indicate an aggressive assertion of his Sixth Amendment rights. *See id.* at 212. Accordingly, the third factor also weighs against Harris.

Because the first three factors do not weigh heavily in Harris's favor, Harris is not entitled to a presumption of prejudice. Harris must therefore demonstrate "actual prejudice" that outweighs the other factors. *See id.* at 209. "Actual prejudice" is assessed in light of the three following interests of the defendant: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. Harris contends that, as a result of the pretrial delay, he lost his opportunity to present his mother as a witness at his trial, because she died twenty months after the indictment. He claims that his mother "could have supported defense assertions of innocence at trial." This blanket statement gives no indication as to the content and relevance of the lost testimony, and how its absence impaired Harris's defense; nor does Harris explain why he or his attorneys failed to take any steps to preserve this testimony for trial. *See Neal*, 27 F.3d at 1043. Therefore, Harris has not shown "actual prejudice," and we reject his claim of a Sixth Amendment violation.

Accordingly, we affirm the district court's denial of Harris's motion to dismiss the indictment for violation of his statutory and constitutional speedy trial rights.

## B. Motion to Suppress

Harris unsuccessfully moved to suppress the evidence seized from his residence and vehicles; he challenged, among other matters, the constitutionality

of the search warrant and of the stop of his pick-up truck. In an appeal of a denial of a motion to suppress evidence, "we review the district court's factual findings for clear error and its legal conclusions, including its ultimate conclusion as to the constitutionality of the law enforcement action, de novo." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002). The evidence presented at the suppression hearing must be viewed in the light most favorable to the prevailing party—in this case, the government. *Id.*

### a. Validity of Search Warrant

Harris first challenges the validity of the search warrant for his residence and his auto detail shop. He argues that the Texas District Court Judge who issued the warrant did not qualify as a "neutral and detached" magistrate because he represented Harris in two felony cases involving drug possession and delivery in 1997. A magistrate issuing a search warrant must satisfy two constitutional requirements: "[h]e must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest or search." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Thus, "[a] magistrate failing to manifest [the] neutrality and detachment demanded of a judicial officer when presented with a warrant application . . . cannot provide valid authorization for an otherwise unconstitutional search." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotation omitted).

The Supreme Court has found a violation of the "neutrality and detachment" obligation of the issuing magistrate in two categories of cases: where he had a pecuniary interest in issuing the warrant, *see Connally v. Georgia*, 429 U.S. 245, 251 (1977), and where he actively participated in the police investigation underlying the warrant, *see Lo-Ji Sales, Inc. v. New York*,

442 U.S. 319, 327–28 (1979). Neither of these circumstances is present here. Further, Harris has presented no evidence of the judge's bias against him or personal knowledge concerning the facts of this case. Absent any indication of prejudice, we see no reason to question the neutrality and detachment of a magistrate who happened to have represented the defendant in an unrelated criminal matter six years prior to the issuance of the warrant at issue. *See, e.g., United States v. Barry-Scott*, 251 F. App'x 983, 992–93 (6th Cir. 2007) (unpublished) (holding that a judge issuing a search warrant was sufficiently neutral and detached, even though he had previously represented the defendant in another drug case); *United States v. Heffington*, 952 F.2d 275, 278–79 (9th Cir. 1991) (finding no constitutional defect in the warrant when the issuing magistrate had previously represented one of the defendants in another narcotics case as a federal defender).

Nor are we convinced by Harris's suggestion that we look to the standard found in the federal recusal statute, which provides that federal judges and magistrates must disqualify themselves "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The "statutory disqualification standard [is] more demanding than that required by the Due Process Clause" and thus does not guide our constitutional analysis here. *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990). Moreover, even assuming that the analogy with the federal recusal statute was persuasive, we and other appellate courts have rejected challenges based on 28 U.S.C. § 455(a) in similar circumstances. *See United States v. Outler*, 659 F.2d 1306, 1312 (5th Cir. Unit B 1981) (holding that a magistrate judge issuing a search warrant was not obligated to disqualify himself because he had previously represented the

government in an unrelated probation revocation hearing against the defendant); *see also United States v. Guthrie*, 184 F. App'x 804, 807–08 (10th Cir. 2006) (unpublished) (rejecting similar challenge under 28 U.S.C. § 455(a) when the issuing magistrate had previously represented the defendant in an unrelated criminal matter). The district court therefore did not err in finding that the judge who issued the search warrant had acted as a "neutral and detached" magistrate.

### b. Stop and Arrest

Harris next contends that his motion to suppress was improperly denied because the stop of his vehicle and his subsequent arrest violated his Fourth Amendment rights. Under the framework established in *Terry v. Ohio*, 392 U.S. 1 (1968), investigative vehicle stops are proper only if "the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. at 19–20). The first *Terry* prong is met when an officer has "an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *Id.*

Harris's contention that the officers had improperly intended to search his truck prior to the stop is without merit. It is well established that "[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment." *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1997) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Harris further claims

that, in this case, the traffic violations occurred after the officers attempted to stop him, and were induced by the officers' conduct in chasing his truck. However, Rhyne testified that he and Gayle observed Harris driving well over the speed limit and running several stop signs before attempting to stop his truck. The magistrate judge's factual findings are consistent with Rhyne's version of the events, and we see no reason to disturb those findings. The stop of Harris's truck, even if pretextual, was justified by Harris's numerous traffic violations.

Further, we reject Harris's claim that his arrest was not "reasonably related in scope" to the circumstances of the stop, in violation of the second *Terry* prong. The Supreme Court has held that warrantless arrests for traffic offenses, such as driving with a suspended license, are permitted when the officers have probable cause to believe that a crime has been committed in their presence. *See Virginia v. Moore*, 128 S. Ct. 1598, 1608 (2008); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that warrantless arrests for minor non-violent crimes are constitutional). In light of the serious traffic violations observed by the officers, we conclude that the detention and arrest of Harris were reasonable under the Fourth Amendment.

We accordingly affirm the denial of Harris's motion to suppress.

## C. Sufficiency of the Evidence

Harris argues that there was insufficient evidence of his "possession" of the pistol seized from his SUV to support his convictions for possession of a firearm by a felon and possession of a firearm in furtherance of a drug trafficking crime. Because Harris preserved his challenge to the sufficiency of the evidence by moving for judgment of acquittal, we employ the usual *de novo*

18

standard of review. *United States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007). "Under this standard, we determine whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt," viewing the evidence in the light most favorable to the government and with all reasonable inferences and credibility choices made in support of a conviction. *Id.*

Possession of a firearm may be "actual or constructive," and "may be proved by circumstantial evidence." *United States v. Salinas*, 480 F.3d 750, 759 (5th Cir. 2007). "Constructive possession can be established by showing (1) ownership, dominion or control over an item; or (2) dominion or control over the place where the item is found." *Id.* Here, the government established that Harris owned the SUV in which the pistol was found. It also presented testimony by Kubin that only Harris had a key to the vehicle, which remained locked at all times, and, in particular, that she did not have access to it. "As an appellate court, it is not our task to weigh the evidence or determine the credibility of witnesses." *United States v. Ybarra*, 70 F.3d 362, 364 (5th Cir. 1995). In light of Kubin's testimony and the absence of any evidence suggesting that Harris did not have "dominion or control" over his SUV, there is no doubt that a reasonable jury could have found Harris guilty of the firearm possession offenses beyond a reasonable doubt.

We therefore affirm the denial of Harris's motion for judgment of acquittal.

## D. Eighth Amendment Claim

Harris contends that he received a life-sentence statutory enhancement in violation of his Eighth Amendment right to be free from "cruel and unusual" punishment. U.S. CONST. amend. VIII. "The appellate court is not to substitute its judgment for that of the legislature nor of the sentencing court as to the

appropriateness of a particular sentence; it should decide only if the sentence is within the constitutional limitations." *Parker*, 505 F.3d at 330 (quotation omitted). Accordingly, "[o]ur review of Eighth Amendment challenges is narrow." *Id.* In addition, "[w]e have previously recognized, following guidance from the Supreme Court, that successful Eighth Amendment challenges to prison-term lengths will be rare." *United States v. Looney*, 532 F.3d 392, 396 (5th Cir. 2008); *see also Rummel v. Estelle*, 445 U.S. 263, 272 (1980) (noting that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare").

Harris was convicted of possession with intent to distribute fifty grams or more of cocaine base, and conspiracy with respect to the same amount, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Any person who violates these statutes "after two or more prior convictions for a felony drug offense have become final . . . shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence." 21 U.S.C. § 841(b)(1)(A). There is no dispute that Harris has a lengthy criminal history that includes several felony convictions for possession and delivery of a controlled substance. However, Harris argues that these prior drug convictions were not "substantial" and that his life sentence was therefore "grossly disproportionate to the severity of [his] crime," in violation of the Eighth Amendment. *Rummel*, 445 U.S. at 271. We disagree. The statutory enhancement, on its face, is imposed regardless of the severity of the underlying felony drug offenses, and we do not find its application in this case "grossly disproportionate" to Harris's crime. *See Parker*, 505 F.3d at 330–31 (rejecting

an Eighth Amendment challenge to a § 841(b)(1)(A) life sentence when the defendant's prior felony drug convictions were over fifteen years old).

Harris's challenge to his life sentence therefore fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.