# United States Court of Appeals for the Fifth Circuit

---

No. 22-50043

---

United States Court of Appeals
Fifth Circuit

**FILED**

February 16, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Carl Monroe Gordon,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CR-226-1

---

Before Stewart, Clement, and Ho, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Following a series of ends-of-justice continuances related to COVID-19, Carl Monroe Gordon was convicted by a jury on counts of aggravated sexual abuse of a child, traveling to engage in illicit sexual conduct, and abusive sexual contact with a child. Gordon argues that delays in bringing him to trial and the district court's denial of his motion to dismiss the indictment violated his statutory and constitutional rights to a speedy trial. 18 U.S.C. § 3161; U.S. Const. amend. VI. For the reasons that follow, we AFFIRM the judgment of the district court.

No. 22-50043

## I. Factual and Procedural History

Gordon was arrested at the Hartsfield-Jackson Atlanta International Airport on December 23, 2019, on allegations of committing a sexual act on a minor. On January 22, 2020, a grand jury indicted Gordon on counts of aggravated sexual abuse of a child (count one), traveling to engage in illicit sexual conduct (counts two and three), sexual abuse of a minor (count four), and abusive sexual contact with a child (count five). Gordon filed a waiver of personal appearance at arraignment and entered a plea of not guilty on January 28, 2020.

On January 31, 2020, the district court entered an order (1) granting Gordon's motion for a continuance; (2) setting the docket call for March 4, 2020; and (3) stating that the time period of the continuance was excludable under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161. On March 4, 2020, Gordon again requested a continuance. The district court granted the request, stating that the time period of the continuance was excludable from the STA calculation.

On February 12, 2020, Gordon filed a motion to revoke his detention order and for pretrial release.[1] The district court orally denied the motion after a hearing on March 13, 2020. The district court then set Gordon's trial for May 4, 2020. The district court subsequently issued a written order memorializing its previous denial of Gordon's motion on March 18, 2020.

_____

[1] Gordon renewed his motion to revoke his detention order and for pretrial release two additional times. On March 31, 2020, Gordon filed a motion for reconsideration of the denial of the motion to revoke detention. The district court issued an order denying the motion for reconsideration of pretrial detention on April 14, 2020. On October 5, 2020, Gordon filed a motion for reconsideration of his pretrial detention. The district court issued an order denying the motion for reconsideration of pretrial detention on November 16, 2020.

No. 22-50043

*A. Chief Judge issues a series of orders, and the district court vacates existing trial date*

Beginning in early 2020, Chief Judge Orlando L. Garcia of the United States District Court for the Western District of Texas issued a series of orders, on ends-of-justice grounds related to the COVID-19 pandemic, continuing all criminal jury trials in the district from March 16, 2020 to a date to be reset by the presiding judges.[2] On March 13, 2020, the chief judge issued the initial district-wide order announcing "the recent outbreak of novel coronavirus in the United States and the State of Texas" and "several confirmed cases of coronavirus within the Western District of Texas." *See* Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic (W.D. Tex. Mar. 13, 2020), https://www.txwd.uscourts.gov/wp-content/uploads/2020/03/Order-Re-COVID-19.pdf. More specifically, the order detailed the Western District's concern "with the health and safety of the public, Court employees, staff of other entities with whom Court personnel interact, litigants, counsel, interpreters, law enforcement officials, and jurors, who must work in close quarters to hear evidence and to deliberate." *Id.* Each subsequent order concluded that "[d]ue to the [Western District's] reduced ability to obtain an adequate spectrum of jurors and due to the reduced availability of attorneys and Court staff to be present in courtrooms . . . the time period of the continuances implemented by this Order are excluded under the Speedy Trial Act[.]" *See, e.g.*, Supplemental Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic

---

[2] *See* U.S. Dist. Ct. for the W. Dist. of Tex., Coronavirus (COVID-19) Guidance: District Wide, https://www.txwd.uscourts.gov/coronavirus-covid-19-guidance/ (last visited Feb. 6, 2024).

(W.D. Tex. Apr. 15, 2020), https://www.txwd.uscourts.gov/wp-content/uploads/2020/03/SupplementalOrderCOVID19-041520.pdf (citing 18 U.S.C. § 3161(h)(7)(A)).

Following the first district-wide order, the presiding district court judge, acting *sua sponte* on March 24, 2020, issued an order in Gordon's case (1) vacating the existing May 4, 2020 trial date; (2) issuing an ends-of-justice continuance relying on the exigent circumstances and district-wide orders related to COVID-19; and (3) stating that the time period of the continuance was excludable from the STA calculation. In issuing the order, the district court incorporated the facts and findings of the then-issued district-wide orders concerning COVID-19 and concluded that "the ends of justice are best served by continuing the proceedings because of the exigent circumstances created by the COVID-19 pandemic [including] the severity of the risk to those who would otherwise be required to work in close quarters absent a continuance, and the public-health matters that weigh in favor of reducing the size of public gatherings and travel," citing the STA, 18 U.S.C. §3161(h)(7)(A). On March 24, 2020, the district court also issued an order resetting the docket call to May 6, 2020, stating that the time period during the continuance was excludable from the STA calculation.

### i. Gordon's trial continued to June 1

On April 13, 2020, the district court issued a case-specific order resetting the jury selection and trial date to June 1, 2020, holding that the interests of justice outweighed the public need for a speedy trial because Gordon needed more time to prepare and stating that the time period of the continuance was excludable from the STA calculation. By May 12, 2020, two additional district-wide orders were issued further suspending trials. Accordingly, the district court issued an additional case-specific order resetting the trial date, docket settings, and all other deadlines, including

No. 22-50043

*Ellis*[3] deadlines, filing of jury instructions, and motions in limine, to a date on or after June 1, 2020.

### ii. Gordon's trial continued to July 13

At the docket call on May 11, 2020, the district court noted that the chief judge had asked the district courts to move all trials to July 2020. The district court expressed concern that the pandemic would dilute the jury pool due to prospective jurors' fears of COVID-19 but proposed ways that it could safely hold jury selection. On May 21, 2020, the district court issued an order setting trial for July 13, 2020, stating that the time period between June 1 and July 13, 2020 was excludable from the STA calculation.

### iii. Gordon's trial continued to August 3

On June 9, 2020, the district court, acting *sua sponte*, issued an order vacating the July 13 trial setting, relying on the exigent circumstances and district-wide orders related to COVID-19. On June 15, 2020, the district court held a status conference at which it (1) noted that all trials in the district were being delayed until at least August; (2) expressed concerns as to the speedy trial rights of defendants in the district; (3) and reset trial for August 3, 2020. On July 14, 2020, the district court issued an order canceling the August 3, 2020 trial, relying on the exigent circumstances and district-wide orders related to COVID-19.

### B. Gordon moves to dismiss the indictment and trial is continued to May 3

On December 9, 2020, Gordon filed a motion to dismiss his indictment for violations of the STA and his Sixth Amendment right to a

---

[3] The deadline fixed by the court for plea negotiations. "The court [has] the prerogative to make and strictly enforce a deadline on plea bargaining." *United States v. Ellis*, 547 F.2d 863, 864 (5th Cir. 1977).

speedy trial. He further alleged that he would suffer irreparable harm because the Government's evidence against him was weak. Finally, he argued that the Government failed to show that suspending his speedy trial rights would "result in the lessening of the spread of" COVID-19 or "that public health would be imperiled if less restrictive measures were imposed." On January 12, 2021, the district court issued an order setting a May 3, 2021 trial date, stating that the ends of justice outweighed the need for a speedy trial because Gordon needed more time to prepare his defense and the period of delay from January 11 through May 3, 2021 was excludable from the STA calculation.

### C. The district court denies Gordon's motion to dismiss

At the January 25, 2021 hearing on Gordon's motion to dismiss, defense counsel argued that the district court could not suspend Gordon's statutory or constitutional right to a speedy trial based on the circumstances created by the pandemic. The district court explained that it did not see the delay as impacting Gordon's statutory rights because the periods of time during the district-wide extensions were exempted from the STA calculation. As for whether the delay violated Gordon's constitutional rights, the district court reasoned: "[I]n order to have a jury trial [which Gordon had requested], we need jurors. And if we bring in a panel that large to pick a jury in this kind of case, we would be violating every [Centers for Disease Control and Prevention (CDC)] guideline of the COVID restrictions." It further noted that it would have difficulty getting grand jurors and jurors to show up at jury selection due to public fear of COVID-19. It stated that it was going to deny Gordon's motion, but it expressed concern as to whether the delay might eventually violate Gordon's constitutional rights if the pandemic continued. The district court stated that Gordon's trial would be its first post-COVID trial. On February 9, 2021, the district court issued a written order denying Gordon's motion to dismiss.

No. 22-50043

## D. *Gordon is convicted*

At the docket call on March 1, 2021, Gordon's counsel explained that he needed time to respond to the Government's pretrial motions and to object to proposed expert witnesses. The district court stated that it would continue the docket call until April 2021 and that the time period until the next docket call was excludable from the STA calculation. On March 4, 2021, the district court issued a written order granting Gordon's motion for a continuance on grounds that he needed more time to prepare his defense and setting the next docket call for April 5, 2021. A period of motions practice ensued.

Gordon's trial began as scheduled with a pretrial conference and voir dire on May 3, 2021. At the start of the proceeding, Gordon re-urged his motion to dismiss on speedy trial grounds. The district court responded that it had previously denied his motion to dismiss because "COVID made it impossible to have trials sooner," noting that Gordon was having the first post-COVID trial at the courthouse. After trial, the jury convicted Gordon on four of the five counts. The district court dismissed count four of the indictment on the Government's motion. Gordon was sentenced to a total of fifty years of imprisonment and a lifetime term of supervised release. Gordon timely appealed.

## II. STANDARD OF REVIEW

### A. *Speedy Trial Act*

"We review the district court's factual findings supporting its Speedy Trial Act ruling for clear error and its legal conclusions *de novo*." *United States v. Perry*, 35 F.4th 293, 351 (5th Cir. 2022) (quoting *United States v. Stephens*, 489 F.3d 647, 652 (5th Cir. 2007)). "Factual findings are 'clearly erroneous only if, based on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *United States v.*

*Barry*, 978 F.3d 214, 217 (5th Cir. 2020) (quoting *United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014)). "There is no clear error if the district court's finding is plausible in light of the record as a whole." *Id.* (quoting *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).

### B. Sixth Amendment

A court evaluates a claimed violation of the constitutional right to a speedy trial by applying the four-factor balancing test articulated in *Barker v. Wingo*, 407 U.S. 514 (1972). "[W]e hold that the appropriate standard of review of the district court's application of the *Barker* factors is *de novo*." *United States v. Molina-Solorio*, 577 F.3d 300, 304 (5th Cir. 2009). "[T]he court reviews fact-finding for clear error." *Id.* (citing *United States v. Frye*, 372 F.3d 729, 735–36 (5th Cir. 2004)).

## III. Discussion

Gordon contends that that the district court erred in denying his motions to dismiss because the delay in his trial violated the STA and his Sixth Amendment right to a speedy trial. We discuss each issue in turn.

### A. Speedy Trial Act

Gordon contends that the pretrial delay of "approximately 468 days" violated the STA because there were more than seventy non-excludable days between his indictment and his trial on the merits. However, the Government avers that the STA clock began to run when Gordon filed his waiver of personal appearance, not six days earlier when the indictment was filed. Hence, we take a moment now to clarify that the triggering event for Gordon's STA clock took place on January 28, 2020, the day of his initial appearance before a judicial officer, which was the later of that date and the filing of the indictment against him. *See* 18 U.S.C. § 3161(c)(1); *United States v. Burrell*, 634 F.3d 284, 287 (5th Cir. 2011); *United States v. Westbrook*, 119

No. 22-50043

F.3d 1176, 1186 (5th Cir. 1997) (noting that courts should not include the date of the triggering event when calculating the STA's 70-day limit). Gordon proceeded to trial 461 days after his initial appearance.

"The Speedy Trial Act of 1974 . . . requires that a criminal defendant's trial commence within [seventy] days after he is charged or makes an initial appearance, whichever is later, *see* [18 U.S.C.] § 3161(c)(1), and entitles him to dismissal of the charges if that deadline is not met, § 3162(a)(2)." *Bloate v. United States*, 559 U.S. 196, 198–99 (2010). "If more than seventy non-excludable days pass between the indictment and the trial, the indictment shall be dismissed on motion of the defendant." *Stephens*, 489 F.3d at 652 (internal quotation marks and citation omitted). Notwithstanding this timeline, the STA excludes certain periods of delay from this calculation. 18 U.S.C. § 3161(h).

Relevant here, the STA exempts from the seventy-day clock: (1) delays resulting from the filing of pretrial motions, § 3161(h)(1)(D), and (2) delays resulting from continuances based on a judge's "findings that the ends of justice[,] served by taking such [a delay] action[,] outweigh the best interest of the public and the defendant in a speedy trial," also known as ends-of-justice continuances. § 3161(h)(7)(A). This circuit has not yet addressed whether the COVID-19 pandemic provided an appropriate basis for granting ends-of-justice continuances. Therefore, we first turn to address Gordon's statutory speedy trial act claim.

From February 5, 2020 to May 3, 2021, the district court granted the following continuances, totaling 454 days:

(1) district-wide orders for continuances (March 13, 2020–April 30, 2021);

(2) district court's January 2020 continuance (February 5–March 4, 2020);

9

No. 22-50043

(3) district court's March 2020 continuance (March 4–May 6, 2020);

(4) district court's April 2020 continuance (April 13–June 1, 2020);

(5) district court's May 2020 continuance (June 1–July 13, 2020);

(6) district court's June 2020 continuance (July 13–August 3, 2020);

(7) district court's July 2020 continuance (August 3, 2020–January 12, 2021);

(8) the motion-to-dismiss continuance (December 9, 2020–February 9, 2021); and

(9) district court's January 2021 continuance (January 11–May 3, 2021).[4]

For the reasons that follow, our review of the record indicates that 454 of the 461 days between Gordon's initial appearance and trial are properly excludable from the speedy trial calculation on trial-related motions and ends-of-justice grounds. Consistent with the statute, seven non-excludable speedy trial days accumulated between Gordon's initial appearance, on January 28, 2020, and trial commencing, on May 3, 2021. We now turn to the district court's motion-to-dismiss continuance to determine whether that time was properly characterized as a delay resulting from other proceedings involving Gordon under § 3161(h)(1)(D) and thus properly excluded for STA purposes.

---

[4] In its order setting the eventual May 3, 2021 trial date, the district court attributed the delay between January 11, 2021 and May 3, 2021 to the fact that "more time [was] needed by [Gordon] for preparation of the defense of this case." However, the district court stated at the January 25, 2021 hearing on Gordon's motion to dismiss that May 2021 was the earliest trial could be set due to the pandemic and that the time period of the continuance was excludable due to the chief judge's district-wide orders which continued trials until April 30, 2021.

No. 22-50043

### *(1) Delays attributable to motions*

Gordon does not directly dispute that the delays otherwise attributable to resolving his pretrial motions tolled the STA clock. Rather, Gordon challenges the district court's determination that the Government's extension request, from December 20, 2020 to January 22, 2021, ahead of the motion-to-dismiss hearing, tolled the STA clock. We conclude that this period of delay is attributable to the resolution of Gordon's motion to dismiss. Such a determination properly comports with the statutory command of this provision. Section 3161(h)(1)(D) excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

On December 9, 2020, Gordon filed a motion to dismiss the indictment for violations of the STA and his Sixth Amendment right to a speedy trial. Subsequently, the Government requested an extension to respond to Gordon's motion, from December 20, 2020 until January 22, 2021, while the ends-of-justice continuances remained pending. During this motion-to-dismiss continuance period, on January 12, 2021, the district court also issued an order setting a May 3, 2021 trial date, stating that the ends of justice outweighed the need for a speedy trial. The district court held an evidentiary hearing on January 25, 2021, where Gordon's defense counsel argued that the district court could not suspend Gordon's statutory or constitutional right to a speedy trial based on the circumstances created by the pandemic. At the January 25, 2021 motion-to-dismiss hearing, the district court denied Gordon's motion. On February 9, 2021, it issued a written order denying Gordon's motion to dismiss.

The district court properly characterized this continuance as a delay resulting from other proceedings concerning the defendant under §

11

3161(h)(1)(D). Hence, the portion of the motion-to-dismiss continuance attributable to the Government's extension request, from December 20, 2020 to January 22, 2021, was properly excluded from the STA calculation. *See United States v. Green*, 508 F.3d 195, 199 (5th Cir. 2007) (holding that the speedy trial clock was automatically tolled during the pendency of the Government's motion for a special trial setting). We now turn to analyze the remaining excludable, ends-of-justice continuances under § 3161(h)(7)(A).

*(2) Delays attributable to ends-of-justice continuances*

Gordon avers that the Government failed to satisfy its burden to show that the ends-of-justice continuances were justified. Notably, the district court issued the majority of the pandemic-related continuances *sua sponte*. For this reason, it was not the Government's burden to support them. *Cf. Burrell*, 634 F.3d at 287 (explaining that the Government has the burden to justify an ends-of-justice continuance where it seeks the benefit of it). In making its balancing determination of the § 3161(h)(7)(B) factors, the district court met the requisite standard of memorializing its reasons for concluding that the ends of justice outweigh the need for a speedy trial.

Although Gordon maintains that the district court failed to make the requisite on-the-record determinations specific to the facts of his case, we disagree. Specifically, he maintains that (1) some of the district court's ends-of-justice continuances failed to specifically reference § 3161(h)(7)(A); (2) the continuances were impermissibly "automatic" based on the chief judge's general orders; and (3) the general district-wide orders, which did not relate to the specific facts of his case, conflicted with federal law and the Constitution. Our review of the ends-of-justice continuance orders reveals that the district court properly complied with the STA by providing reasons that "can be fairly understood as being those that actually motivated the

court at the time it granted the continuance." *United States v. Bieganowski*, 313 F.3d 264, 283 (5th Cir. 2002).

Distinctly, ends-of-justice continuances only toll the STA when "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A); *see United States v. Blackwell*, 12 F.3d 44, 47 (5th Cir. 1994) (holding that a continuance did not pause the speedy trial clock where the district court did not make requisite determinations). The Supreme Court has recognized that "the [STA] is ambiguous on precisely when those findings must be 'se[t] forth, in the record of the case.'" *Zedner v. United States*, 547 U.S. 489, 506–07 (2006) (quoting § 3161(h)(7)(A)). The Court further observed that, while "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance," the district court must at the very least put those determinations on the record by the time it rules on a defendant's motion to dismiss under § 3162(a)(2). *Id.* at 507 & n.7. Moreover, "failure to make any express finding on the record cannot be harmless error." *United States v. Dignam*, 716 F.3d 915, 921 (5th Cir. 2013) (citing *Zedner*, 547 U.S. at 506–07).

In *Bieganowski*, this court held that "[t]he only requirements for [an ends-of-justice continuance] are that the order memorializing the continuance indicate when the motion was granted, and that the reasons stated be and can be fairly understood as being those that actually motivated the court at the time it granted the continuance." 313 F.3d at 283. The Supreme Court has explained that the ends-of-justice provision "gives the district court discretion—within limits and subject to specific procedures— to accommodate limited delays for case-specific needs." *Zedner*, 547 U.S. at 498–99. The STA also provides a list of non-exclusive factors that the district

No. 22-50043

court should consider in determining whether an ends-of-justice continuance is warranted. § 3161(h)(7)(B). [5]

In the several orders it issued, the district court explicitly incorporated the findings referenced in the district-wide orders issued by the chief judge, which in turn explained "the continued severity of the risk to the [the public and those involved in trials] by the spread of COVID-19 in the Western District of Texas" and made findings related to the ends of justice under § 3161(h)(7)(A). *See, e.g.*, Supplemental Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic (W.D. Tex. May 8, 2020), https://www.txwd.uscourts.gov/wp-content/uploads/2020/03/SupplementalOrderCOVID19%20050820.pdf (citing 18 U.S.C. § 3161(h)(7)(A)). Aside from reference to the district-wide orders, the court also made findings related to Gordon's individual case. In

─────────────────────────

[5] In determining whether to grant an ends-of-justice continuance, the court shall consider a non-exhaustive list of factors, including:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel question of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

its *sua sponte* orders granting ends-of-justice continuances, the district court made specific findings related to the risks to the public posed by COVID-19.

Moreover, at Gordon's motion-to-dismiss hearing, the district court explained why it could not hold a trial in Gordon's case. It noted that Gordon had demanded a jury trial and that holding such a trial would be impossible due to district-wide orders, CDC guidelines, and prospective jurors' fears. And, when Gordon renewed his motion to dismiss at the commencement of trial, the district court again explained that a jury trial could not be held before May 2021 due to the pandemic.

The remaining periods of delay were properly excluded as ends-of-justice continuances under § 3161(h)(7)(A). The district-wide ends-of-justice continuances and the district court's case-specific ends-of-justice continuances were based on valid on-the-record reasons—primarily those related to the COVID-19 pandemic—and ergo properly tolled the STA clock. *See, e.g.*, District Court Order, March 24, 2020 (issuing the first pandemic-related, case-specific order resetting Gordon's trial and explaining that the circumstances at that time necessitated the continuance). Similarly, our sister circuits that have addressed the issue have uniformly upheld district court decisions to stop the STA clock during ends-of-justice continuances that were based on the COVID-19 pandemic. *See, e.g.*, *United States v. Keith*, 61 F.4th 839, 850–51 (10th Cir. 2023) (holding that district court's ends-of-justice continuances did not violate the STA); *United States v. Olsen*, 21 F.4th 1036, 1047 (9th Cir. 2022) (same); *United States v. Leveke*, 38 F.4th 662, 670 (8th Cir. 2022) (same); *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *2 (6th Cir. Dec. 7, 2021), *cert. denied*, 142 S. Ct. 1187 (2022) (same); *United States v. Pair*, 84 F.4th 577, 583–86 (4th Cir. 2023) (same). Consequently, it is evident the district court considered the factors in § 3161(h)(7)(B) and did not err in continuing Gordon's jury trial under §

3161(h)(7)(A). Thus, we affirm the judgment on statutory speedy-trial grounds.

### B. Sixth Amendment

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. The only remedy for a violation of the right is dismissal of the indictment. *Barker*, 407 U.S. at 522. "It will be the unusual case, however, where the time limits under the Speedy Trial Act have been satisfied but the right to a speedy trial under the Sixth Amendment has been violated." *Bieganowski*, 313 F.3d at 284.

A court evaluates a claimed violation of the constitutional right to a speedy trial by applying a four-factor balancing test examining: (1) the "length of delay," (2) "the reason for the delay," (3) "the defendant's assertion of his right," and (4) "prejudice to the defendant." *Barker*, 407 U.S. at 530. The court balances the factors by "weigh[ing] the first three *Barker* factors . . . against any prejudice suffered by the defendant due to the delay in prosecution. Obviously, in this balancing, the less prejudice a defendant experiences, the less likely it is that a denial of a speedy trial right will be found." *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (internal citations omitted). When more than one year has passed between indictment and trial, "this court undertakes a full *Barker* analysis, looking to the first three factors to decide whether prejudice will be presumed." *United States v. Parker*, 505 F.3d 323, 328 (5th Cir. 2007) (internal citations omitted). We discuss each factor in turn.

### (1) Length of Delay

"*Barker*'s first factor, length of delay, functions as a triggering mechanism." *United States v. Duran-Gomez*, 984 F.3d 366, 374 (5th Cir. 2020). The Government concedes that because more than one year passed

before the commencement of trial, a full *Barker* analysis is triggered.[6] We conclude that this first factor favors Gordon. The other *Barker* factors, however, favor the Government.

### (2) Reason for the Delay

In analyzing the second factor, the reason for delay, this court asks, "whether the government or the criminal defendant is more to blame." *Duran-Gomez*, 984 F.3d at 374 (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)). Under the second factor, "pretrial delay is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656. "[D]ifferent weights should be assigned to different reasons" for delay. *Barker*, 407 U.S. at 531. And "a valid reason . . . should serve to justify appropriate delay." *Id.* "A more neutral reason . . . should be weighted less heavily but nevertheless should be considered." *Id.* Here, the record shows that the primary reason for the pretrial delay in this case was the COVID-19 pandemic. These delays cannot fairly be attributed to the Government or to Gordon. *See Keith*, 61 F.4th at 853 (deciding "to treat COVID-19 as a truly neutral justification—not favoring either side" because the "extenuating circumstances brought about by the pandemic prevented the government from trying [the defendant] in a speedy fashion"); *see also United States v. Strother*, No. 21-40592, 2023 WL 7399550, at *2 (5th Cir. Nov. 8, 2023) (holding that the "COVID-19 continuance is a neutral reason that weighs in [the defendant's] favor, but not heavily" while also concluding that other reasons for delay,

---

[6] The Government, however, does not concede that the delay of 467 days between the date of indictment and the date of trial is presumptively prejudicial. The Government cites *United States v. Harris* for the proposition that "delays of less than five years are not enough, by duration alone, to presume prejudice." 566 F.3d 422, 432 (5th Cir. 2009).

specifically the defendant's numerous pretrial motions, "do not weigh in his favor").[7]

As noted, the district court provided justifications at the motion-to-dismiss hearing for why it could not hold a trial in Gordon's case. Furthermore, at a prior status conference on June 15, 2020, the district court also suggested the possibility of moving the trial to a different county where it might be safer for jurors, but Gordon's counsel rejected the proposal. Gordon's rejection of a change in venue—prolonging the trial delay—weighs against him. Thus, we hold that the second *Barker* factor weighs mostly against Gordon.

### (3) Assertion of Right

Under the third factor, the "defendant's assertion of his speedy trial right" receives "strong evidentiary weight," while "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32. This court has noted that "mere assertion" of the right does not automatically cause this factor to weigh in a defendant's favor, and a defendant who waits too long to assert his right will have his silence weighed against him. *E.g.*, *Parker*, 505 F.3d at 329–30 (observing that the eight-month delay in asserting the right weighed against the defendant).

"An assertion of [a speedy trial right] is a demand for a speedy trial, which will generally be an objection to a continuance or a motion asking to go to trial." *Frye*, 489 F.3d at 211. This court has held that a defendant's

---

[7] Because this issue is res nova in this circuit, we consider persuasive authority from other circuits. As a prior panel of this court has released an unpublished, per curiam opinion addressing this Sixth Amendment speedy trial claim, we also consider the unpublished decision as persuasive. *See Strother*, 2023 WL 7399550.

"repeated motions for dismissal of [charges] are not an assertion of the right [to a speedy trial], but are an assertion of the remedy. A motion for dismissal is not evidence that the defendant wants to be tried promptly." *Id.* at 212. Rather, "a defendant's assertion of his speedy trial rights should manifest his desire to be tried promptly." *Id.* at 211–12 (internal quotation marks omitted); *see also United States v. Harris*, 566 F.3d 422, 432 (5th Cir. 2009). This court assesses the totality of the proceedings in considering the amount of time that passed before a defendant should have raised his speedy trial rights. *Parker*, 505 F.3d at 330.

In this case, Gordon's assertion of his speedy trial right was delayed as a result of his own actions. On December 9, 2020, Gordon filed a motion to dismiss on speedy trial grounds—322 days after his indictment. On January 7, 2021, Gordon objected to the Government's request for an extension to respond to his motion to dismiss—351 days after his indictment. Gordon concedes that he took no position on the Government's only other motion for a continuance, which it filed on May 6, 2020, relying on the district-wide orders related to COVID-19. Because "an assertion of speedy trial rights generally takes the form of 'an objection to a continuance or a motion asking to go to trial,'" we conclude that both Gordon's delayed assertion of his right and his delayed objection to continuances did not evince a desire to go to trial. *See Harris*, 566 F.3d at 432.

Outside of the district-wide orders and case-specific orders related to COVID-19, many of the trial continuances, resulting in part from pretrial motions and requests for continuances, can be attributed to Gordon. Moreover, as the Government notes, Gordon's requests for release were not accompanied by a demand for a speedy trial. Under these circumstances, Gordon's many motions, regarding continuances and reconsideration of pretrial detention, contradict his argument that he was a defendant

aggressively asserting his desire to be tried promptly. Accordingly, we hold that the third *Barker* factor weighs heavily against Gordon.

*(4) Prejudice*

The fourth factor is the prejudice suffered by the defendant due to the delay. Gordon argues that prejudice should be presumed here. Ordinarily, the burden is on the defendant to demonstrate actual prejudice. *Serna-Villarreal*, 352 F.3d at 230–31. However, "there is a scenario in which prejudice can be presumed." *Duran-Gomez*, 984 F.3d at 379. "Prejudice may be presumed where the first three factors weigh 'heavily' in the defendant's favor." *United States v. Hernandez*, 457 F.3d 416, 421 (5th Cir. 2006). But as we have noted, although the length of delay weighs against the Government, the second and third factors weigh against Gordon. Thus, prejudice against Gordon is not presumed under the *Serna-Villarreal* framework. 352 F.3d at 231–33.

Alternatively, Gordon argues that he suffered actual prejudice, which he bears the burden of showing. "Actual prejudice is assessed in light of the three following interests of the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Harris*, 566 F.3d at 433 (internal quotation marks omitted).

First, Gordon argues that he has suffered "oppressive pretrial incarceration" and "anxiety and concern." However, Gordon's claims fail to sufficiently allege "oppressive pretrial incarceration" and "anxiety and concern" because they are too speculative. *See United States v. Crouch*, 84 F.3d 1497, 1515–16 (5th Cir. 1996). "Speculative prejudice does not suffice." *Id.* at 1515 (internal citation omitted). And here, Gordon failed to support his allegations with evidence (1) that he was affected by any failure of the detention facility to follow proper COVID-19 safety protocol; (2) that he was

actually deprived of water, medical care, or any other necessities; (3) that he had suffered distinctive anxieties beyond those experienced by any inmate detained pending trial; or (4) that he was actually subjected to abusive treatment by other inmates.

Next, Gordon contends that the delay adversely impacted his defense. "The Supreme Court has stated that limiting the defendant's ability to prepare his case is the most serious of the three types of prejudice." *Frye*, 489 F.3d at 212 (citing *Barker*, 407 U.S. at 532). Still, we conclude that Gordon's claims—alleging that his defense was impaired simply because he was detained—are not compelling. Gordon argues that his defense was impaired and therefore he suffered actual prejudice because the year-long detention (1) purportedly made him look guilty in the eyes of potential witnesses and (2) prevented him from personally assisting in his defense by directly contacting witnesses. However, "vague assertions of lost witnesses, faded memories, or misplaced documents are insufficient. A mere loss of potential witnesses is insufficient absent a showing that their testimony would have actually aided the defense." *Crouch*, 84 F.3d at 1515 (quoting *United States v. Beszborn*, 21 F.3d 62, 66–67 (5th Cir. 1994)) (internal quotation marks, brackets, and citation omitted). Because there is an "absence of serious prejudice," we hold that the fourth *Barker* factor weighs against Gordon. *Barker*, 407 U.S. at 534.

In sum, Gordon has failed to show that the delays in his case have violated the Constitution. Thus, we hold that the district court did not err in denying Gordon's motion to dismiss on constitutional speedy-trial grounds.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.